Ellen S. Mandell, for relator.

———

MINSTER FARMERS COOPERATIVE EXCHANGE COMPANY, INC., APPELLEE AND CROSS-APPELLANT, *v.* MEYER, APPELLANT AND CROSS-APPELLEE.

MINSTER FARMERS COOPERATIVE EXCHANGE COMPANY, INC., APPELLEE AND CROSS-APPELLANT, *v.* DUES, APPELLANT AND CROSS-APPELLEE.

[Cite as *Minster Farmers Coop. Exchange Co., Inc. v. Meyer,* 117 Ohio St.3d 459, 2008-Ohio-1259.]

(Nos. 2006–1061 and 2006–1069—Submitted June 6, 2007—Decided March 26, 2008.)

———

PFEIFER, J.

{¶ 1} The issue in these consolidated cases concerns the "written contract" requirement of R.C. 1343.03(A).  R.C. 1343.03(A) states that the interest rate on a book account shall be the statutory rate set forth in R.C. 5703.47 "unless a written contract provides a different rate of interest."  Today we hold that notations on invoices and account statements setting forth an interest rate do not constitute a "written contract" for purposes of R.C. 1343.03(A).

## Factual and Procedural Background

### The Meyer Case

{¶ 2} Appellee and cross-appellant, Minster Farmers Cooperative Exchange Company, Inc. ("Minster Farmers"), is in the business of selling agricultural supplies. Appellant and cross-appellee, Roger Meyer, maintained a commercial account with Minster Farmers beginning in 1988, purchasing primarily feed, fertilizer, and miscellaneous farm supplies. From the beginning, Minster Farmers assessed a finance charge on Meyer's account. It claims that in January 1998, it informed customers by letter that it was increasing its finance charge from 1.5 percent to two percent per month, 24 percent annually. Meyer denies receiving that letter. However, on subsequent invoices, language such as the following appeared: "Net due last day of the month. 2% finance charge per month after 30 days." None of the invoices contain Meyer's signature.

{¶ 3} Meyer complained to Minster Farmers employees Brian Heitkamp and Neal Wiedeman in 2001 about the interest Minster Farmers was charging on his invoices. He also wrote a letter to Minster Farmers' attorney on May 12, 2003, in which he stated that the amount Minster Farmers claimed that he owed was not correct "because they charged me as high as 30% interest, which I brought to their attention but Brian Heitkamp and Neal didn't want to do anything about."

{¶ 4} In February 2005, Minster Farmers filed a complaint against Meyer seeking $51,374.89 for the unpaid balance on his account. Meyer asserted that Minster Farmers was limited to recovering interest from Meyer at the statutory prejudgment interest rate set forth in R.C. 1343.03, not the 24 percent annual rate it charged him. Meyer also asserted that even if the 24 percent rate were acceptable, Minster Farmers incorrectly compounded the interest on a monthly basis, resulting in each monthly interest charge being added to the principal balance, giving Minster Farmers interest upon interest.

{¶ 5} Minster Farmers moved for summary judgment. On October 13, 2005, the trial court granted summary judgment to Minster Farmers, finding that R.C. 1302.10, which provides that a written confirmation operates as an acceptance even though it states additional or different terms, controlled the case. The trial court found that Meyer's reliance on R.C. 1343.03(A)(1) was "misplaced because the instant transaction was between merchants governed by the Uniform Commercial Code, who have bargained for this finance charge provision." The trial court found that "there was a contract between [Meyer] and [Minster Farmers] regarding the finance charges to which [Meyer] is legally bound."

{¶ 6} Meyer filed a motion for reconsideration on October 28, 2005, only as to the compounding issue, which the trial court denied.

{¶ 7} Meyer appealed. On April 17, 2006, the Third District Court of Appeals affirmed the trial court's decision in part, holding that the terms of the invoice established a written contract and that the trial court did not err in applying an interest rate above the statutory rate provided in R.C. 5703.47. Meyer appeals that aspect of the appellate court's ruling. The court reversed the trial court's decision regarding the compounding of interest. Minster Farmers cross-appeals that aspect of the appellate court's ruling.

{¶ 8} The cause is before this court upon the acceptance of a discretionary appeal and cross-appeal.

## The Dues Case

{¶ 9} Appellant and cross-appellee, Robert Dues, maintained a commercial account with Minster Farmers, purchasing primarily fuel, dairy-cattle feed, and miscellaneous farm supplies. Minster Farmers always assessed a finance charge to Dues's account; at some point after January 1998, Minster Farmers' invoices and delivery tickets noted that interest would be charged at the rate of two percent per month, 24 percent annually. The parties stipulated at trial that Dues never signed any of the invoices for feed setting forth that interest rate.

{¶ 10} Minster Farmers sued Dues for $37,837.58, the unpaid amount remaining on his account. Dues did not dispute that he had purchased the various items stated on the account, but did dispute that Minster Farmers could charge his account the interest as set forth in the itemized account. On October 14, 2005, the trial court ruled in favor of Minster Farmers, for the same reasons as it had in the *Meyer* case.

{¶ 11} Dues appealed. On April 17, 2006, the Third District Court of Appeals reversed in part and affirmed in part on the same basis on which it had decided the *Meyer* case.

{¶ 12} The cause is before this court upon the acceptance of a discretionary appeal and cross-appeal.

## Law and Analysis

{¶ 13} R.C. 1343.03(A) sets a maximum rate of interest that may be charged on a book account:

{¶ 14} "In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon * * * any book account, * * * the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract."

{¶ 15} (During some of the relevant time period, former R.C. 1343.03(A) itself declared a limit of ten percent instead of referring to R.C. 5703.47. 139 Ohio Laws, Part I, 2034.)

{¶ 16} No party disputes that the accounts at issue in these cases are book accounts. "An open book account is a detailed statement that constitutes the principal record of the transactions between the creditor and debtor arising out of a contract or fiduciary relationship. The statement details the debits and credits in connection with the debtor/creditor relationship." *Cusano v. Klein* (C.A.9, 2001), 264 F.3d 936, 942, fn. 2. A book account " 'begins with a balance, preferably at zero, or with a sum recited that can qualify as an account stated, but at least the balance should be a provable sum. Following the balance, the item or items, dated and identifiable by number or otherwise, representing charges, or debits, and credits, should appear. Summarization is necessary showing a running or developing balance or an arrangement which permits the calculation of the balance claimed to be due.' " *Asset Acceptance Corp. v. Proctor*, 156 Ohio App.3d 60, 2004-Ohio-623, 804 N.E.2d 975, ¶ 12, quoting *Brown v. Columbus Stamping & Mfg. Co.* (1967), 9 Ohio App.2d 123, 126, 38 O.O.2d 143, 223 N.E.2d 373.

{¶ 17} The accounts at issue meet the definition and requirements of book accounts, and thus R.C. 1343.03(A) applies. R.C. 1343.03(A) is a specific statute addressing the maximum rate of interest that may be charged on a book account absent a written contract establishing a different interest rate.

{¶ 18} Minster Farmers urges that R.C. 1302.10, not R.C. 1343.03(A), controls this case. R.C. 1302.10, which codifies a portion of the Uniform Commercial Code, provides that a written confirmation of an agreement between merchants sent within a reasonable time operates as an acceptance even though it states additional or different terms:

{¶ 19} "(A) A definite and seasonable expression of acceptance or a written confirmation that is sent within a reasonable time operates as an acceptance even though it states terms additional or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

{¶ 20} "(B) The additional terms are to be construed as proposals for addition to the contract. Between merchants, the terms become part of the contract unless one of the following applies:

{¶ 21} "(1) The offer expressly limits acceptance to the terms of the offer.

{¶ 22} "(2) They materially alter it.

{¶ 23} "(3) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received."

{¶ 24} Minster Farmers argues that the finance charges set forth on delivery slips and invoices constituted additional terms that Meyer and Dues accepted—through failure to object to them within a reasonable time—and became terms of the contract between the parties.

{¶ 25} When statutes conflict, the more specific provision controls over the more general provision. R.C. 1.51. R.C. 1302.10 addresses generally how provisions may be added to a contract. R.C. 1343.03(A) specifically establishes how parties can agree to an interest rate higher than the maximum allowed under R.C. 5703.47. R.C. 1343.03(A) requires a written contract, not simply an additional term added to an invoice and met without resistance by another party, to establish an interest rate greater than that set forth in R.C. 5703.47.

{¶ 26} Thus, R.C. 1343.03(A) is the statute that Minster Farmers must satisfy. That is, it could not collect from Meyer and Dues the interest rate it claims is due unless that rate had been set forth in a "written contract." The appellate court held that the terms of the invoices established a written contract sufficient to satisfy R.C. 1343.03(A). The court based its decision on an earlier holding from the Third District Court of Appeals in *Champaign Landmark, Inc. v. McCullough* (Nov. 27, 1990), 3d Dist. No. 6–89–17, 1990 WL 188002. In *Champaign Landmark*, the court's decision was based largely on the fact that the defendant had established that he was aware of the credit policy in place; the trial court had found "most enlightening" a letter written by the defendant to the plaintiff's credit manager, which the court said "in effect admitted the existence and validity of the credit policy and did not dispute either the validity of the claim or the amount claimed." The trial court found that in the letter in question, the "defendant arbitrarily reduced the amount of interest to 14% due to 'drought and resulting low yields' and the fact that he could not afford to pay." There is no such letter in evidence "admitt[ing] the existence and validity of the credit policy" in either of the cases before us today.

{¶ 27} Regardless, we agree with the view put forth by the clear majority of Ohio appellate courts that have addressed the question whether invoices can serve as the written contract required by R.C. 1343.03(A). Those courts have written that "in order for a written contract to exist for purposes of R.C. 1343.03(A), there must be a writing to which both parties have assented. * * * An invoice or monthly statement does not constitute such a writing." *WC Milling, L.L.C. v. Grooms*, 164 Ohio App.3d 45, 2005-Ohio-5420, 841 N.E.2d 324, ¶ 20, citing *Yager Materials, Inc. v. Marietta Indus. Ents., Inc.* (1996), 116 Ohio App.3d 233, 235–236, 687 N.E.2d 505; see also *Hobart Bros. Co. v. Welding Supply Serv., Inc.* (1985), 21 Ohio App.3d 142, 144, 21 OBR 152, 486 N.E.2d 1229; *Olander & Brophy v. Northeastern Pools* (Jan. 7, 1991), Stark App. No. CA–8219, 1991 WL 6268; *Kut Kwick Corp. v. N. Dixie Parts & Servs., Inc.* (Apr. 21, 1988),

Montgomery App. No. CA10678, 1988 WL 38130; *Bunnell Elec., Inc. v. Ameri-wash*, Warren App. No. CA2004–01–009, 2005-Ohio-2502, 2005 WL 1201563; *Yuhanick v. Cooper* (Mar. 14, 2001), Columbiana App. No. 99 CO 37, 2001 WL 274545. In *Scotts Co. v. Cent. Garden & Pet Co.* (C.A.6, 2005), 403 F.3d 781, 791, the Sixth Circuit Court of Appeals, too, held that invoices setting forth an interest rate "did not meet the written-contract requirement of [R.C.] 1343.03(A)."

{¶ 28} We agree that an invoice or account statement unilaterally stating interest terms does not meet R.C. 1343.03's requirement of a written contract. "An invoice, as such, is no contract. An invoice is a mere detailed statement of the nature, quantity and the cost or price of the things invoiced." *Tanenbaum Textile Co., Inc. v. Schlanger* (1942), 287 N.Y. 400, 404, 40 N.E.2d 225, citing *Sturm v. Boker* (1893), 150 U.S. 312, 328, 14 S.Ct. 99, 37 L.Ed. 1093. By stating interest terms on invoices or account statements, Minster Farmers made no attempt to condition the acceptance of orders on Meyer's or Dues's agreement to Minster Farmers' interest rate terms; instead, it tried to unilaterally impose those terms after the fact. " 'A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.' *Perlmuter Printing Co. v. Strome, Inc.* (N.D.Ohio 1976), 436 F.Supp. 409, 414. A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134." *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16. Minster Farmers' placement of an interest rate on invoices constituted no promise by Meyer or Dues and demonstrated no meeting of the minds between the parties.

{¶ 29} Since the interest rate Minster Farmers seeks to impose was not a term of a written contract, Minster Farmers was limited by R.C. 1343.03(A) to charging the amount of interest set forth in R.C. 5703.47. Minster Farmers' claim to interest charged above that rate is unenforceable.

{¶ 30} We limit the effect of our decision to these cases and to transactions arising in the future. As recognized by the United States Supreme Court in *Great N. Ry. Co. v. Sunburst Oil & Refining Co.* (1932), 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360, state courts have broad authority to determine whether their decisions shall operate prospectively only. *OAMCO v. Lindley* (1987), 29 Ohio St.3d 1, 29 OBR 122, 503 N.E.2d 1388, syllabus. "Consistent with what has been termed the *Sunburst* Doctrine, state courts have * * * recognized and used prospective application of a decision as a means of avoiding injustice in cases dealing with questions having widespread ramifications for persons not parties to

the action." *Hoover v. Franklin Cty. Bd. of Commrs.* (1985), 19 Ohio St.3d 1, 9, 19 OBR 1, 482 N.E.2d 575 (Douglas, J., concurring). We do not intend for this decision to create shock waves throughout the many sectors of Ohio's economy that rely on book accounts to do business, nor do we wish to encourage a propagation of pleadings regarding past practices. This decision establishes the proper method for implementing interest rates exceeding the statutory maximum on a book account pursuant to R.C. 1343.03(A) in these two cases and for transactions occurring after the date of this decision.

{¶ 31} Our determination that Minster Farmers was limited to charging the statutory interest rate contained in R.C. 5703.47 moots Minster Farmers' cross-appeals.

{¶ 32} Accordingly, we reverse the judgments of the court of appeals and remand the causes to the trial court.

Judgments reversed
and causes remanded.

MOYER, C.J., and O'CONNOR, O'DONNELL, LANZINGER, and BRYANT, JJ., concur.

LUNDBERG STRATTON, J., concurs in judgment only.

PEGGY L. BRYANT, J., of the Tenth Appellate District, sitting for CUPP, J.

———————

Michael A. Burton, for appellee and cross-appellant.

Faulkner, Garmhausen, Keister & Shenk, Bryan A. Niemeyer, and John M. Deeds, for appellants and cross-appellees.