DiCenzo et al., Appellees, *v.* A–Best Products Company, Inc. et al., Appellants.

[Cite as *DiCenzo v. A–Best Prods. Co., Inc.,* 120 Ohio St.3d 149, 2008-Ohio-5327.]

(No. 2007–1628—Submitted June 4, 2008—Decided October 22, 2008.)

Lundberg Stratton, J.

## I. Introduction

{¶ 1} In this case, we must determine whether our decision in *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267, which imposed strict liability on nonmanufacturing sellers of defective products, applies retroactively to products sold before *Temple* was announced in 1977. Applying the three-part test in *Chevron Oil Co. v. Huson* (1971), 404 U.S. 97, 106–107, 92 S.Ct. 349, 30 L.Ed.2d 296, we hold that *Temple* applies prospectively only. Accordingly, we reverse the judgment of the court of appeals.

## II. Facts

{¶ 2} From the 1950s until 1993, Joseph DiCenzo was employed at the Wheeling–Pittsburgh Steel Corporation. DiCenzo held various positions during his employment at the mill, including tin-line laborer, tractor operator, piler, welding-machine operator, and tin-line operator. During this employment, DiCenzo was exposed to products that contained asbestos. Appellant George V. Hamilton, Inc. ("Hamilton") supplied insulation products that contained asbestos to the mill during DiCenzo's employment there. Hamilton did not manufacture these products. In 1999, DiCenzo experienced pleural effusion, and in the fall, doctors diagnosed DiCenzo with mesothelioma. Approximately three months later, he died.

{¶ 3} DiCenzo's wife, Genevieve DiCenzo, along with other plaintiffs, filed suit against approximately 90 defendants, including Hamilton, alleging strict liability, defective design, and failure to warn; negligent failure to warn; breach of warranty; conspiracy, concert of action, and common enterprise; alternative liability; and market-share liability.

{¶ 4} Hamilton filed a motion for summary judgment alleging that it was not strictly liable for supplying asbestos products prior to 1977 because *Temple v. Wean*, 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267, which in 1977 held nonmanufacturing suppliers liable for defective products, does not apply retroactively. The three-judge panel unanimously granted summary judgment to Hamilton on the strict-liability claim.

{¶ 5} The court of appeals applied the test in *Chevron Oil*, 404 U.S. at 106–107, 92 S.Ct. 349, 30 L.Ed.2d 296, but held that *Temple* did not satisfy the criteria that support prospective-only application on the strict-liability claim. *DiCenzo v. A–Best Prods. Co., Inc.*, Cuyahoga App. No. 88583, 2007-Ohio-3270, 2007 WL 1976735, ¶ 30. Therefore, the court of appeals held, *Temple* applied retrospectively. Id. The court of appeals remanded the cause for further proceedings on DiCenzo's strict-liability claims against Hamilton. Id. at ¶ 31.

{¶ 6} This cause is now before us pursuant to our acceptance of Hamilton's discretionary appeal. *DiCenzo v. A–Best Prods. Co., Inc.*, 116 Ohio St.3d 1455, 2007-Ohio-6803, 878 N.E.2d 33.

{¶ 7} Hamilton argues that under *Chevron Oil, Temple* should receive prospective-only application. DiCenzo makes three arguments in response: (1) the general rule is that judicial decisions are applied retrospectively absent language indicating otherwise, and because *Temple* did not specify that it applies only prospectively, it applies retrospectively; (2) *Harper v. Virginia Dept. of Taxation* (1993), 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74, overruled *Chevron Oil,* and *Harper* requires retrospective application of all civil decisions; and (3) notwithstanding the test in *Chevron Oil, Temple* should be applied retrospectively.

## III. Analysis

### A. *Chevron Oil Co. v. Huson*

{¶ 8} Because *Chevron Oil* is central to the dispute before this court, we begin our analysis by examining its holding. In *Chevron Oil,* Huson filed a lawsuit in January 1968 against Chevron for injuries that he received while working on its drilling rig in December 1965. *Chevron Oil Co. v. Huson,* 404 U.S. at 98, 92 S.Ct. 349, 30 L.Ed.2d 296. When Huson filed his lawsuit, it was thought that admiralty law, not state law, applied and that the admiralty doctrine of laches determined the statute of limitations. Id. at 99, 92 S.Ct. 349, 30 L.Ed.2d 296. Chevron did not question the timeliness of Huson's complaint. Id.

{¶ 9} While respondent's case was pending, however, the court decided *Rodrigue v. Aetna Cas. & Sur. Co.* (1969), 395 U.S. 352, 366, 89 S.Ct. 1835, 23 L.Ed.2d 360, which held that state law applied to claims for personal injury on oil rigs. Relying on *Rodrigue,* the District Court in *Chevron Oil* held that the respondent's claim was barred by Louisiana's one-year statute of limitations. The court of appeals reversed. *Huson v. Chevron Oil Co.* (C.A.5, 1970), 430 F.2d 27.

{¶ 10} On appeal to the Supreme Court, Huson argued that *Rodrigue* should apply only prospectively. The court held that the answers to three questions determine whether a decision should apply prospectively only: (1) does the decision establish a new principle of law that was not clearly foreshadowed? (2) does retroactive application of the decision promote or hinder the purpose behind the decision? and (3) does retroactive application of the decision cause an inequitable result? *Chevron Oil,* 404 U.S. at 106–107, 92 S.Ct. 349, 30 L.Ed.2d 296. After examining these questions, the court concluded that (1) applying the Louisiana statute of limitations to a federal admiralty law was a case of first impression that was not foreshadowed; (2) applying the one-year statute of limitations would deprive respondent of any remedy whatsoever, a result incon-

sistent with the purpose of affording employees comprehensive remedies; and finally, (3) applying the one-year statute of limitations to respondent's complaint would have been inequitable because at the time, he did not know that the one-year limitation would apply to his case. Thus, *Chevron Oil* held that *Rodrigue* applied only prospectively to Huson and therefore did not time-bar Huson's complaint. Id.

### B. This Court's Decisions Addressing Retroactive/Prospective Application of Court Decisions

{¶ 11} We now examine Ohio law addressing prospective/retroactive application of court decisions. In *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 57 O.O. 411, 129 N.E.2d 467, this court held, "The general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it was never the law." Id. at 209, 57 O.O. 411, 129 N.E.2d 467. See also *Deskins v. Young* (1986), 26 Ohio St.3d 8, 10–11, 26 OBR 7, 496 N.E.2d 897. However, we also recognized two exceptions to the general rule, which occur when "contractual rights have arisen" or when "vested rights have been acquired under the prior decision," and in these situations, the decision would be applied only prospectively. *Peerless* at 209, 57 O.O. 411, 129 N.E.2d 467. See also *Gooding v. Natl. Union Fire Ins. Co. of Pittsburgh*, Stark App. No. 2003CA00209, 2004-Ohio-694, 2004 WL 292068, ¶ 22, 27.

{¶ 12} "However, blind application of the *Peerless* doctrine has never been mandated by this court." *Wagner v. Midwestern Indemn. Co.* (1998), 83 Ohio St.3d 287, 290, 699 N.E.2d 507, citing *Roberts v. United States Fid. & Guar. Co.* (1996), 75 Ohio St.3d 630, 633, 665 N.E.2d 664. " 'Consistent with what has been termed the *Sunburst* Doctrine, state courts have * * * recognized and used prospective application of a decision as a means of avoiding injustice in cases dealing with questions having widespread ramifications for persons not parties to the action.' "[1] (Ellipsis sic.) *Minster Farmers Coop. Exchange Co., Inc. v. Meyer*, 117 Ohio St.3d 459, 2008-Ohio-1259, 884 N.E.2d 1056, ¶ 30, quoting *Hoover v. Franklin Cty. Bd. of Commrs.* (1985), 19 Ohio St.3d 1, 9, 19 OBR 1, 482 N.E.2d 575, (Douglas, J., concurring). See also *OAMCO v. Lindley* (1987), 29 Ohio St.3d 1, 29 OBR 122, 503 N.E.2d 1388. In *Minster*, the court "establish[ed] the proper method for implementing interest rates exceeding the statutory maximum on a book account pursuant to R.C. 1343.03(A)," but the court declined to apply the decision retroactively because the court did not want to "create

---

1. *Great N. Ry. Co. v. Sunburst Oil & Refining Co.* (1932), 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (state courts have broad authority to determine whether their decisions shall apply prospectively only).

shock waves throughout the many sectors of Ohio's economy that rely on book accounts to do business." *Minster* at ¶ 30.

{¶ 13} We have also stated that "[c]onsideration should be given to the purpose of the new rule or standard and to whether a remand is necessary to effectuate that purpose." *Wagner,* 83 Ohio St.3d at 290, 699 N.E.2d 507. In *Wagner,* the court declined to retroactively apply to the parties before it intervening case law that lowered the burden of proving that an insurer acted in bad faith, even though under *Peerless,* when we overrule a bad decision, "the effect is * * * that the former decision * * * never was the law." Id. at 289, 699 N.E.2d 507, citing *Peerless,* 164 Ohio St. at 210, 57 O.O. 411, 129 N.E.2d 467. The court reasoned that the jury had already found that the insurer had acted in bad faith under the higher burden of proof, so remanding the cause to apply the lower burden of proof from the intervening case would serve no purpose. Id.

{¶ 14} Therefore, the general rule in Ohio is that a decision will be applied retroactively unless retroactive application interferes with contract rights or vested rights under the prior law. However, a court also has discretion to impose its decision only prospectively after considering whether retroactive application would fail to promote the rule within the decision and/or cause inequity.

### C. *Chevron Oil Co. v. Huson is Consistent with Ohio Law in Determining Prospective/Retroactive Application of Court Decisions*

{¶ 15} Having examined both state and federal law on the issue of prospective/retroactive application of court decisions, we must consider whether we should adopt *Chevron Oil* as the test for determining when a court decision should be applied only prospectively.

{¶ 16} This court has never considered whether *Chevron Oil* applies to Ohio law.[2] However, a majority of the appellate districts that have considered the applicability of the *Chevron Oil* test to determine retroactive/prospective application of Ohio court decisions have adopted it.[3] See *Anello v. Hufziger* (1st

---

2. In *Hyde v. Reynoldsville Casket Co.* (1994), 68 Ohio St.3d 240, 626 N.E.2d 75, this court held that *Bendix Autolite Corp. v. Midwesco Ents., Inc.* (1988), 486 U.S. 888, 108 S.Ct. 2218, 100 L.Ed.2d 896 (Ohio's tolling statute was unconstitutional because it violated the Commerce Clause) could not be applied retroactively to bar state claims that accrued before *Bendix* was decided. In *Reynoldsville Casket Co. v. Hyde* (1995), 514 U.S. 749, 115 S.Ct. 1745, 131 L.Ed.2d 820, the appellee argued that *Chevron Oil* required prospective-only application of *Bendix.* The Supreme Court disagreed and reversed this court's judgment, holding that *Harper v. Virginia Dept. of Taxation* (1993), 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74, overruled *Chevron Oil,* and *Harper* required retrospective application of *Bendix.* However, *Bendix* involved a violation of the Commerce Clause, which is a *federal* issue.

3. {¶ a} Of the appellate districts that have addressed the issue, only the Fourth and Tenth have rejected the *Chevron Oil* analysis. In *Jordan v. Armsway Tank Transport,* Darke App. No. 1621,

Dist.1988), 48 Ohio App.3d 28, 30, 547 N.E.2d 1220; *Moore v. Natl. Castings* (Dec. 14, 1990), 6th Dist. No. L–89–381, 1990 WL 205004; *Day v. Hissa* (8th Dist.1994), 97 Ohio App.3d 286, 646 N.E.2d 565; and *In re Moore* (7th Dist.), 158 Ohio App.3d 679, 2004-Ohio-4544, 821 N.E.2d 1039. All these appellate districts have recognized the general rule that a decision applies retroactively, but have used *Chevron Oil* as an analytical framework to determine whether prospective-only application is justified. We note that the second and third questions presented in *Chevron Oil* (will retroactive application of the decision serve or hinder the purpose behind the decision to be applied and will retroactive application of that decision cause inequity?) are almost identical to the factors that Ohio courts currently consider in determining whether a decision should receive prospective-only application. See *Wagner*, 83 Ohio St.3d at 289–290, 699 N.E.2d 507 (will retroactive application of the decision promote the purpose of the rule within that decision, and will retroactive application of the decision cause inequitable results?).

{¶ 17} We note also that the third question by *Chevron Oil*, which asks whether the decision to be applied retrospectively addresses an issue of first impression that was not foreshadowed, is persuasive in determining whether a decision should be applied retrospectively because it gauges the foreseeability of the law being considered for retroactive application. Backward application of such a decision causes great inequity to those who are burdened by unforeseen obligations.

{¶ 18} Therefore, the *Chevron Oil* test is not only consistent with Ohio law in addressing retroactive/prospective application of court decisions, but adds the important consideration of whether the decision addresses an issue of first impression.

### D. Chevron Oil Remains Good Law

{¶ 19} DiCenzo argues that *Harper*, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74, overruled *Chevron Oil.*

---

2004-Ohio-261, 2004 WL 102785, the Second District Court of Appeals had to decide whether our holding in *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, applied retrospectively. In support of his argument that *Galatis* should be applied only prospectively, the appellant urged the court to rely on the test in *Chevron Oil Co.* The court of appeals refused, finding that *Chevron Oil* was "unambiguously overruled by *Harper*." *Jordan* at ¶ 15.

{¶ b} In *Jones v. St. Anthony Med. Ctr.* (Feb. 26, 1996), 95APE08–1014, 1996 WL 70997, *6, the issue before the Tenth District Court of Appeals was whether *Clark v. Southview Hosp. & Family Health Ctr.* (1994), 68 Ohio St.3d 435, 628 N.E.2d 46, applied retroactively. The court rejected the argument that the *Chevron Oil* test applied to determine whether retroactive application of *Clark* was proper, reasoning that *Chevron Oil* does not apply to the Ohio Supreme Court's overruling a prior state common-law decision.

{¶ c} For reasons discussed later in the opinion, we find that neither *Jordan* nor *Jones* persuades us to reject *Chevron Oil.*

{¶ 20} In *Harper*, federal and military employees of Virginia sought a refund of improperly assessed taxes pursuant to *Davis v. Michigan Dept. of Treasury* (1989), 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891. Michigan had been taxing benefits of federal and military retirees, but not pension benefits of retirees of the state of Michigan and its subdivisions. The court in *Davis* had held that a state "violates principles of intergovernmental tax immunity by favoring retired state and local government employees over retired federal employees." Id. at 817, 109 S.Ct. 1500, 103 L.Ed.2d 891. Relying on *Chevron Oil*, the Virginia Supreme Court had affirmed the trial court's refusal to apply the holding in *Davis* retroactively to taxes that were imposed before *Davis* was decided. *Harper v. Virginia Dept. of Taxation* (1991), 241 Va. 232, 401 S.E.2d 868.

{¶ 21} On appeal, the Supreme Court in *Harper* reversed the judgment of the Virginia Supreme Court, rejecting *Chevron Oil'* s prospective-only application of *Davis*, and remanded the cause for the state court to apply *Davis* retroactively. The court in *Harper* reasoned, "When this Court applies a rule of *federal* law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." (Emphasis added.) *Harper v. Virginia Dept. of Taxation*, 509 U.S. at 97, 113 S.Ct. 2510, 125 L.Ed.2d 74. The court continued, "Whatever freedom state courts may enjoy to limit the retroactive operation of their own interpretation of state law, see *Great Northern R. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364–366, 53 S.Ct. 145, 148–149, 77 L.Ed. 360 (1932), cannot extend to their interpretations of *federal law*." (Emphasis added.) Id. at 100, 113 S.Ct. 2510, 125 L.Ed.2d 74. This language indicates that *Harper'* s limitation of *Chevron Oil* applies to federal law only.

{¶ 22} Several state supreme courts have also held that *Harper'* s overruling of *Chevron Oil* applies to federal law only, and therefore *Chevron Oil* may still provide guidance on state court decisions as to retroactivity. See *Findley v. Findley* (2006), 280 Ga. 454, 460, 629 S.E.2d 222 (Georgia Supreme Court declined to adopt rule of "universal retroactivity" in civil cases from *Harper* and instead held that prospective-only application of state court decisions might be warranted if criteria in *Chevron Oil* are satisfied); *Dempsey v. Allstate Ins. Co.*, 325 Mont. 207, 2004 Mont. 391, 104 P.3d 483, ¶ 24, 31 (Montana Supreme Court held that *Harper* overruled *Chevron Oil* as it applied to federal law, but that state decisions may be applied prospectively-only under *Chevron Oil); Beavers v. Johnson Controls World Servs., Inc.* (1994), 118 N.M. 391, 398, 881 P.2d 1376 (New Mexico Supreme Court rejected "the hard-and-fast rule [of retroactivity] prescribed for federal cases in *Harper* " and instead held that a presumption of prospectivity can be overcome by a "sufficiently weighty combination of one or more of the *Chevron Oil* factors"); *New Bern v. New Bern–Craven Cty. Bd. of*

*Edn.* (1994), 338 N.C. 430, 442–444, 450 S.E.2d 735 (Supreme Court of North Carolina recognized that *Harper* does not control in determining whether a state court decision that does not interpret federal law may be applied prospectively only); *In re Commitment of Thiel,* 241 Wis.2d 439, 2001 WI App. 52, 625 N.W.2d 321, ¶ 10, fn. 6 (Wisconsin Supreme Court held that *Harper* applied only to federal law, and therefore it does not prohibit application of *Chevron Oil* to matters concerning the retroactivity of state law).

{¶ 23} Pursuant to our understanding of *Harper,* and consistent with the holdings in these cases, we conclude that *Harper* overrules *Chevron Oil,* but only as it applies to federal law. Therefore, we find DiCenzo's argument that *Harper* overrules *Chevron Oil* as applied to Ohio common law to be without merit.

{¶ 24} Finding that *Chevron Oil* remains viable for purposes of analyzing state law, and that it supplements Ohio's retroactive/prospective analysis, we adopt its analytical framework for the purpose of determining when an exception to retroactive application of Ohio state court decisions may be justified. See *Sunburst,* 287 U.S. at 364–366, 53 S.Ct. 145, 77 L.Ed. 360 (state courts may determine whether application of their opinions is retroactive or prospective).

{¶ 25} Accordingly, the general rule is that an Ohio court decision applies retrospectively unless a party has contract rights or vested rights under the prior decision. *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 57 O.O. 411, 129 N.E.2d 467, syllabus. However, an Ohio court has discretion to apply its decision only prospectively after weighing the following considerations: (1) whether the decision establishes a new principle of law that was not foreshadowed in prior decisions; (2) whether retroactive application of the decision promotes or retards the purpose behind the rule defined in the decision; and (3) whether retroactive application of the decision causes an inequitable result. *Chevron Oil,* 404 U.S. at 106–107, 92 S.Ct. 349, 30 L.Ed.2d 296.

### E. *Chevron Oil Applied to Temple v. Wean United, Inc.*

{¶ 26} DiCenzo argues that *Temple v. Wean,* 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267, did not contain any language imposing only prospective application, and therefore pursuant to the general rule, *Temple* was, and must continue to be, applied retroactively. DiCenzo also argues that several Ohio appellate decisions purportedly have applied *Temple* retroactively. DiCenzo essentially argues that the passage of time and appellate cases that have applied *Temple* retrospectively preclude us from applying *Temple* only prospectively.

{¶ 27} None of the appellate decisions cited by DiCenzo expressly addressed the forward or backward operation of *Temple.* Thus, none of these decisions specifically set precedent regarding *Temple's* forward or backward operation. Moreover, we are not bound by these decisions.

{¶ 28} Finally, as we recognized earlier in our analysis, this court has the authority to impose prospective-only application of our decisions. *Minster,* 117 Ohio St.3d 459, 2008-Ohio-1259, 884 N.E.2d 1056, ¶ 30. The mere passage of time, without more, does not diminish our authority to impose a prospective-only application of a court decision. That said, prospective-only application is justified only under exceptional circumstances, and a prospective-only application of a court decision that is imposed years after its publication is an even rarer occurrence. Nevertheless, if *Temple* presents us with the extraordinary circumstances that satisfy the *Chevron Oil* test, then prospective-only application may be justified. Accordingly, we hold that *Chevron Oil* can be applied to determine whether prospective-only application of *Temple* is justified.

  F. *Under Chevron Oil, Temple Requires Prospective–Only Application*

{¶ 29} We now apply the *Chevron Oil* test to determine whether prospective-only application of *Temple* is justified.

  1. Nonmanufacturing–Supplier Liability Was an Issue of First Impression in *Temple v. Wean*

{¶ 30} Historically, a lack of privity between consumers and manufacturers prevented consumers from recovering damages for a defective product under a breach-of-warranty claim against the product's manufacturer. *Wood v. Gen. Elec. Co.* (1953), 159 Ohio St. 273, 50 O.O. 286, 112 N.E.2d 8, paragraph two of the syllabus (consumer could not maintain action against manufacturer under breach of warranty for fire damage caused by defective electric blanket); see also *Welsh v. Ledyard* (1957), 167 Ohio St. 57, 4 O.O.2d 27, 146 N.E.2d 299 (consumer could not recover from manufacturer of defective cooking appliance under breach-of-warranty theory because her husband, who had purchased the appliance, had no privity with the retailer). Consumers typically have no contractual ties (i.e., privity) with manufacturers of consumer products because products typically pass from the manufacturer through various middlemen before ultimately reaching consumers. *Inglis v. Am. Motors Corp.* (1965), 3 Ohio St.2d 132, 139, 32 O.O.2d 136, 209 N.E.2d 583, citing *Santor v. A & M Karagheusian* (1965), 44 N.J. 52, 207 A.2d 305. However, in a series of cases issued from 1958 through 1966, this court gradually relaxed certain long-standing legal rules that made consumer actions against *manufacturers* more viable.

{¶ 31} In *Rogers v. Toni Home Permanent Co.* (1958), 167 Ohio St. 244, 4 O.O.2d 291, 147 N.E.2d 612, a hair product caused a consumer personal injuries. The consumer filed suit against the manufacturer, alleging negligence, breach of implied warranty, and a breach of express warranty based on the manufacturer's advertisements that the product was safe. Id. at 244–245, 4 O.O.2d 291, 147 N.E.2d 612. The issue before this court was whether the consumer could maintain a claim for a breach of an express warranty. Id. at 245, 4 O.O.2d 291,

147 N.E.2d 612. The court recognized that the prevailing view was that privity of contract was required to bring an action alleging the breach of express warranty. However, the court held that the manufacturer's advertisements about its product's safety effectively created an express warranty upon which the consumer could rely and that her breach-of-warranty claim could arise in tort. Id. at paragraph three of the syllabus. Thus, the court held that a lack of privity did not prevent her claim for breach of an express warranty against the manufacturer for the defective hair product.

{¶ 32} In *Inglis*, 3 Ohio St.2d 132, 32 O.O.2d 136, 209 N.E.2d 583, the plaintiff succeeded in recovering damages for losses caused by a defectively manufactured automobile under a theory of breach of express warranty. This court affirmed, extending the rule that it had announced in *Toni* (permitting express-warranty claim for personal injury) to the consumer in *Inglis* for recovery of damages against the manufacturer caused by the defective automobile. Id. at paragraph three of the syllabus.

{¶ 33} Finally, in *Lonzrick v. Republic Steel Corp.* (1966), 6 Ohio St.2d 227, 35 O.O.2d 404, 218 N.E.2d 185, the court held that even absent privity, a consumer could maintain a claim for the breach of an implied warranty against the manufacturer for injuries caused by its defective product.

{¶ 34} In *Lonzrick*, the plaintiff was injured when steel joists collapsed and fell on him. Id. at 228, 35 O.O.2d 404, 218 N.E.2d 185. The plaintiff sued the manufacturer of the steel joists in tort based upon a breach of an implied warranty. Id. at 230, 35 O.O.2d 404, 218 N.E.2d 185. The issue was whether the plaintiff, who was injured by a defective product, could maintain an action alleging breach of an *implied* warranty based in tort, because unlike in *Toni* and *Inglis*, the manufacturer in *Lonzrick* made no advertised representations about the metal beams. The court held that advertising was not relevant to determining whether a manufacturer should be liable. More critical to the analysis was that by placing the product into the stream of commerce, the manufacturer had implicitly represented the product to be of "good and merchantable quality, fit and safe for the ordinary purposes for which such steel joists are used." Id. at 236, 35 O.O.2d 404, 218 N.E.2d 185. Thus, the court held that the plaintiff could maintain a claim for breach of an implied warranty against the manufacturer based in tort.

{¶ 35} Thus, in *Toni, Inglis,* and *Lonzrick,* the court gradually relaxed the long-held legal requirement of privity, held that a breach-of-warranty claim could arise out of tort, and recognized that a claim for breach of implied warranty was viable when the manufacturer did not advertise. This gradual evolution in the products-liability law was aimed at making *manufacturers* more accessible to consumer-product lawsuits. Indeed, it was the lack of a contractual relationship

between consumers and manufacturers that spurred the products-liability evolution in the first place. See Dunwell, Recovery For Damage to the Defective Product Itself: An Analysis of Recent Product Liability Legislation (1987), 48 Ohio St.L.J. 533, 534, see also *Inglis,* 3 Ohio St.2d at 137–138, 32 O.O.2d 136, 209 N.E.2d 583. These cases epitomized the "slow, orderly and evolutionary development" of Ohio products-liability law against *manufacturers. Lonzrick,* 6 Ohio St.2d at 239, 35 O.O.2d 404, 218 N.E.2d 185.

{¶ 36} In contrast, *Temple v. Wean* marked a relatively large step in the further development of the products-liability law in its holding, *"One who sells any product* in a defective condition unreasonably dangerous to the user or consumer or to his property *is subject to liability* for physical harm thereby caused to the ultimate user or consumer, or to his property, if

{¶ 37} "(a) the seller is engaged in the business of selling such a product, and

{¶ 38} "(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." (Emphasis added.) *Temple,* 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267, paragraph one of the syllabus.

{¶ 39} Although plaintiff's evidence in *Temple* failed to prove liability against multiple defendants, the court's analysis makes clear that for the first time, the court defined a rule that allowed *nonmanufacturing* suppliers to be liable for defective products that they sell. We begin our review of the analysis in *Temple* by examining the facts.

{¶ 40} Betty Temple was injured by a punch press. Wean United Incorporated manufactured the punch press, which was sold to General Motors Corporation ("G.M."). *Temple,* 50 Ohio St.2d at 318, 4 O.O.3d 466, 364 N.E.2d 267. G.M. in turn sold the punch press to Turner Industries, and Turner sold it to Wean, the plaintiff's employer. Id. After her injury, Temple sued Wean United, as well as the subsequent punch-press vendors, G.M. and Turner. Id. at 319, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 41} *Temple* adopted 2 Restatement of the Law 2d, Torts (1965), Section 402A, holding that "a plaintiff must prove that the product was defective at the time it left the seller's hands" for the seller to be held liable. *Temple,* 50 Ohio St.2d at 322, 4 O.O.3d 466, 364 N.E.2d 267. However, the evidence showed that the press had been modified *after* it had been sold to plaintiff's employer and that the modification was the cause of the plaintiff's injury. Id. at 323, 4 O.O.3d 466, 364 N.E.2d 267. This circumstance "absolve[d] the manufacturer, Wean, and the *subsequent vendor,* G.M., from strict tort liability." (Emphasis added.) Id. at 324, 4 O.O.3d 466, 364 N.E.2d 267. G.M. was a nonmanufacturing seller of the press.

{¶ 42} Thus, *Temple* clearly defined a new rule that nonmanufacturing suppliers of products could be held liable for injuries caused by those products. Prior to *Temple,* no holding from this court had permitted the seller of a product who was not also the manufacturer to be liable for a defective product under a breach-of-warranty theory based in tort absent privity, and none foreshadowed that such a holding was on the horizon. Clearly, *Temple* addressed an issue of first impression that had not been foreshadowed in prior cases.

2. Retroactive Application of *Temple* Neither Promotes Nor Hinders the Purpose Behind the Products–Liability Law

{¶ 43} The second prong of the test in *Chevron Oil* asks whether applying the decision retroactively promotes or hinders the purpose behind the rule stated in the decision. *Chevron Oil,* 404 U.S. at 106–107, 92 S.Ct. 349, 30 L.Ed.2d 296. We conclude that retroactive application of *Temple* will neither promote nor hinder the purpose behind the products-liability law.

{¶ 44} A primary "purpose of the strict liability doctrine is to induce manufacturers and suppliers to do everything possible to reduce the risk of injury and insure against what risk remains." *In re Goldberg 23 Trial Group* (May 9, 2006), Cuyahoga C.P. No. SD–97–073958; see also *Prentis v. Yale Mfg. Co.* (1984), 421 Mich. 670, 689–690, 365 N.W.2d 176 ("a primary purpose of products liability law is to encourage the design of safer products * * *").

{¶ 45} Products containing asbestos have not been manufactured or sold for approximately 30 years. The time for making these products safer has come and gone. Thus, retroactively applying *Temple* to nonmanufacturing sellers of asbestos products will not promote the purpose of making those products safer.

{¶ 46} Moreover, one of the expressed reasons for the adoption of Section 402A of 2 Restatement of the Law 2d, Torts, in *Temple* was that "there are virtually no distinctions between Ohio's 'implied warranty in tort' theory and the Restatement version of strict liability in tort, and * * * the Restatement formulation, together with its numerous illustrative comments, greatly facilitates analysis in this area." (Footnote omitted.) *Temple,* 50 Ohio St.2d at 322, 4 O.O.3d 466, 364 N.E.2d 267. Again, applying *Temple* retroactively to impose liability on a nonmanufacturing supplier of asbestos products would neither promote nor impede the purpose of facilitating the analysis of products-liability law.

3. It Would Be Inequitable to Impose *Temple* on Nonmanufacturing Suppliers of Asbestos Products

{¶ 47} As we noted in section I. above, *Temple,* which was decided in 1977, marked the first time this court had held that a nonmanufacturing seller of a product could be held liable for injuries caused by a defective product. Thus, nonmanufacturing sellers of asbestos, such as Hamilton, could not have foreseen

that these products, distributed from the 1950s to the 1970s, could decades later result in Hamilton's being liable for injuries caused by that product. Imposing such a potential financial burden on these nonmanufacturing suppliers years after the fact for an obligation that was not foreseeable at the time would result in a great inequity.

{¶ 48} Thus, the answers to the questions posed in *Chevron Oil* collectively indicate that our decision in *Temple* should be applied prospectively only. Therefore, we hold that *Temple v. Wean* applies only prospectively. Accordingly, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

Judgment reversed.

O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

MOYER, C.J., dissents without opinion.

PFEIFER, J., dissents with opinion.

———————

**PFEIFER, J., dissenting.**

{¶ 49} What the majority does today is unheard of. It revisits a case decided over 30 years ago, declares that that case's holding should be applied prospectively only, and thereby exempts an entire class of defendants from strict tort liability. Today's holding is an affront to stare decisis, runs contrary to our own case law, and makes a mockery of the *Chevron Oil* test while ostensibly applying it. More importantly, today's decision leaves Ohioans asking, "What is the law?"

{¶ 50} Before today, a simple rule applied regarding the applicability of this court's decisions: " 'In the absence of a specific provision in a decision declaring its application to be prospective only, * * * the decision shall be applied retrospectively as well.' " *Lakeside Ave. Ltd. Partnership v. Cuyahoga Cty. Bd. of Revision* (1999), 85 Ohio St.3d 125, 127, 707 N.E.2d 472, quoting *State ex rel. Bosch v. Indus. Comm.* (1982), 1 Ohio St.3d 94, 98, 1 OBR 130, 438 N.E.2d 415. This court has made certain decisions prospective only. See *Oamco v. Lindley* (1987), 29 Ohio St.3d 1, 2, 29 OBR 122, 503 N.E.2d 1388; *Minster Farmers Coop. Exchange Co., Inc. v. Meyer*, 117 Ohio St.3d 459, 2008-Ohio-1259, 884 N.E.2d 1056, ¶ 30. The United States Supreme Court allowed for such prospective pronouncements in *Great N. Ry. Co. v. Sunburst Oil & Refining Co.* (1932), 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360, holding that state courts have broad authority to determine whether their decisions shall operate prospectively only. " 'Consistent with what has been termed the *Sunburst* Doctrine, state courts have * * * recognized and used prospective application of a decision as a means of avoiding injustice in cases dealing with questions having widespread ramifications

for persons not parties to the action.'" *Minster Farmers*, 117 Ohio St.3d 459, 2008-Ohio-1259, 884 N.E.2d 1056, at ¶ 30, quoting *Hoover v. Franklin Cty. Bd. of Commrs.* (1985), 19 Ohio St.3d 1, 9, 19 OBR 1, 482 N.E.2d 575 (Douglas, J., concurring).

{¶ 51} Courts applying the *Sunburst* doctrine leave no doubt as to what the law is and to whom it applies; the determination that the decision will be prospective only is made clear in the very opinion that announces the decision. This court could have applied the *Sunburst* doctrine in *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267, the case the majority exhumes today, had it intended a prospective-only application of that decision. In *Temple*, this court held that suppliers—not just manufacturers—were strictly liable for defective products they supplied. Certainly the *Temple* court foresaw that other suppliers in other cases could likewise be held strictly liable for the products they supplied. Yet this court in *Temple* did not exempt those other suppliers from the court's holding. For decades, anyone—especially defendant-suppliers involved in asbestos-injury cases—would have believed that the decision in *Temple* was retroactive. That logical belief, rooted in the stability of this court's decisions, is now torn asunder.

{¶ 52} As applied in this case, the test set forth in *Chevron Oil. Co. v. Huson* (1971), 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296, does violence to stare decisis. In this case, the majority takes the test that has been subsequently rejected by the court that created it and has adopted it in Ohio. In *Chevron Oil*, the United States Supreme Court developed a three-part test to determine whether a decision should apply only prospectively to a particular plaintiff. In *Chevron Oil*, the law—specifically, a statute of limitations—changed during the pendency of the plaintiff Huson's case, barring his already pending claim. The statute of limitations had not been an issue in Huson's case until the court's decision in *Rodrigue v. Aetna Cas. & Sur. Co.* (1969), 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360. The court set forth three separate factors as to whether *Rodrigue* should apply to Huson's case:

{¶ 53} "First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see e.g., *Hanover Shoe, Inc. v. United Shoe Machinery Corp.* [ (1968), 392 U.S., 481, 496, 88 S.Ct., 2224, 20 L.Ed.2d 1231], or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, e.g., *Allen v. State Board of Elections* [ (1969), 393 U.S. 544, 572, 89 S.Ct. 817, 22 L.Ed.2d 1]. Second, it has been stressed that 'we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' *Linkletter v. Walker* [ (1965), 381 U.S. 618, 629, 85 S.Ct. 1731, 14

L.Ed.2d 601]. Finally, we have weighed the inequity imposed by retroactive application, for '(w)here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.' *Cipriano v. City of Houma* [ (1969), 395 U.S. 701, 706, 89 S.Ct. 1897, 23 L.Ed.2d 647]." *Chevron Oil,* 404 U.S. at 106–107, 92 S.Ct. 349, 30 L.Ed.2d 296.

{¶ 54} The court concluded that as to that particular plaintiff, Huson, the answer was affirmative to all three inquiries and held that the holding in *Rodrigue* did not apply to Huson. *Chevron Oil* at 100, 92 S.Ct. 349, 30 L.Ed.2d 296. Notably, in *Chevron Oil,* the prospective application applied to only the plaintiff. Here, the majority appears to make *Temple* prospective as to any defendant asbestos supplier.

{¶ 55} The United States Supreme Court has since repudiated the *Chevron Oil* test, holding, "When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." *Harper v. Virginia Dept. of Taxation* (1993), 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74. While the court left to the states their own determination of prospective application as to their own cases, the high court's jurisprudential imprimatur is now missing from the *Chevron Oil* test.

{¶ 56} Still, as the majority relates, some states continue to rely on the *Chevron Oil* test to determine whether cases should be applied prospectively. The test has never been adopted by this court, though it has been used by other Ohio appellate courts. However, in all the Ohio cases cited by the majority, as in *Chevron Oil* itself, the courts were dealing with instances in which the law changed during the pendency of the underlying case, and the court was left to determine whether the new or old law should apply.

{¶ 57} That is hardly the case in this matter. *Temple* was decided long before this case was filed. This is not an instance in which the matter had proceeded under one set of rules and then the law changed during the course of litigation.

{¶ 58} Even if we were to apply the *Chevron Oil* test in this case, a prospective-only application is not justified. The first element of the test is whether the decision established a new principle of law that was not clearly foreshadowed. The majority states that *Temple* defined a new rule that nonmanufacturing suppliers of products could be held liable for injuries caused by those products, that *Temple* "addressed an issue of first impression that had not been foreshadowed in prior cases." The holding in *Temple* did not come out of the blue or from the back of a cocktail napkin—it came from Section 402A of the Restatement of the Law 2d, Torts, and was a culmination of long-developing Ohio

law. The Restatement itself is a roadmap of where courts are going. The court in *Temple* reviewed the development of the law that led to its eventual adoption of Section 402a of the Restatement:

{¶ 59} "Although this court has never expressly adopted Section 402A as the standard for strict liability in tort, we did, in *Lonzrick* [*v. Republic Steel Corp.* (1966), 6 Ohio St.2d 227, 35 O.O.2d 404, 218 N.E.2d 185], cite Section 402A, as well as *Greenman v. Yuba Power Products* (1963), 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, the first case to apply the principles underlying the section. Since *Greenman* was decided, the rule of the Restatement has been adopted or approved by the vast majority of courts which have considered it. Because there are virtually no distinctions between Ohio's 'implied warranty in tort' theory and the Restatement version of strict liability in tort, and because the Restatement formulation, together with its numerous illustrative comments, greatly facilitates analysis in this area, we hereby approve Section 402A of the Restatement of Torts 2d." (Footnotes omitted.) *Temple,* 50 Ohio St.2d at 322, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 60} *Temple* continued an entirely predictable progression of the law, fore-shadowed by this court's previous citation in *Lonzrick* to the Restatement section it eventually adopted in *Temple*. *Temple* thus does not meet the first prong of the *Chevron Oil* test.

{¶ 61} As for the second prong, whether retroactive application of the decision promotes or hinders the purpose behind the decision, the majority takes a neutral view, finding that "retroactive application of *Temple* will neither promote nor hinder the purpose behind the products-liability law." If there is such a neutral result, then the extraordinary remedy of prospective application should not lie. Further, at least part of the aim of strict products liability is to protect the consumer. Certainly, a retroactive application of *Temple* allows a consumer to gain the benefit of those protections.

{¶ 62} The final prong to consider is whether retroactive application of the decision might cause an inequitable result. The majority is unable to point to evidence regarding the inequitable effect as to this particular defendant; it levels a blanket assumption that generic nonmanufacturing sellers of asbestos could not have foreseen potential liability. Only this majority could conclude that the equities here lie with the entities that profited from the decades-long distribution of poisonous materials that demonstrably caused horrific damage to Ohio workers. Moreover, what of the thousands of cases already tried or settled involving asbestos suppliers? Is there equity in holding the suppliers in those cases to a different standard than the suppliers who will benefit from this case? Finally, asbestos suppliers have long been a part of the asbestos-litigation system. To

excuse them all from strict liability would be a shock to the entire system. Should suppliers alone be free from the fallout from asbestos?

{¶ 63} Where do we go from here? Any responsible defense attorney would now seek the prospective-only application of *Lonzrick*, which established strict liability for manufacturers. An audacious attorney and a willing court could accomplish a lot.

{¶ 64} We need to think about what today's decision means to this court as an institution. As a court that accepts cases in areas of the law that are unsettled, any of our decisions could come under attack decades later because they offered a new perspective of the law at the time they were decided. Need we constantly look ahead, and guard against future meddling by stamping each decision "Retroactive and Prospective"? Is not the better practice to signal prospective-only application as we have previously done—by mentioning it in the opinion? This court spoke by not speaking in *Temple*. Had this court sought to make its holding prospective only, it could have done so. Had this court in *Temple* had any idea what this majority could convince itself to do 30 years later, is there any doubt that this court would have explicitly called for retroactive application? Is there any doubt?

---

Goldberg, Persky & White, P.C., Joseph J. Cirilano, Mark C. Meyer, David B. Rodes, Diana Nickerson Jacobs, and Jason T. Shipp, for appellees.

Willman & Arnold, L.L.P., and Ruth A. Antinone, for appellant George V. Hamilton, Inc.

Shook, Hardy & Bacon, L.L.P., Victor E. Schwartz, Cary Silverman, and Mark A. Behrens, urging reversal for amici curiae Coalition for Litigation Justice, Inc.; National Federation of Independent Business Legal Foundation; National Association of Wholesaler–Distributors; Chamber of Commerce of the United States of America; American Insurance Association; National Association of Mutual Insurance Companies; Property Casualty Insurers Association of America; and American Chemistry Council.

Ulmer & Berne, L.L.P., Bruce P. Mandel, Marvin L. Karp, and Max W. Thomas, urging reversal for amici curiae, Ceecorp, Inc.; Cleveland Oak, Inc.; Fisher Scientific Co., L.L.C.; The Edward Hart Co.; McMaster–Carr Supply Co.; P.C. Campana, Inc.; and Standard Glove & Safety Equipment Co.

Bonezzi, Switzer, Murphy, Polito & Hupp Co., L.P.A., William D. Bonezzi, Kevin O. Kadlec, Joseph T. Ostrowski, and Keith Hansbrough, urging reversal for amici curiae Donald McKay Smith, Inc.; F.B. Wright Co. of Cincinnati;

Hersh Center Packing Co.; M.F. Murdock Co.; MVS Co., Inc.; and Yohe Supply Co.

Kelley, Jasons, McGowan, Spinelli & Hanna, L.L.P., and John A. Kristan Jr., urging reversal for amicus curiae Red Seal Electric Co.

Weston Hurd, L.L.P., and Jennifer Riester, urging reversal for amici curiae Akron Gasket & Packing Enterprise, Inc.; Fidelity Builders Supply; and Graybar Electric Co., Inc.

Mansour, Gavin, Gerlack, & Manos Co., L.P.A., Samuel R. Martillotta, and Edward O. Patton, urging reversal for amicus curiae F.B. Wright Co.

Gallagher Sharp and Daniel J. Michalec, urging reversal for amicus curiae Glidden Co.

McMahon DeGulis, L.L.P., and Stephen H. Daniels, urging reversal for amici curiae Advance Auto Parts, Inc. and Sears Roebuck and Co.

Dickie, McCamey & Chilcote, P.C., Richard C. Polley, and Piero P. Cozza, urging reversal for amicus curiae Frank W. Schaefer, Inc..

Zimmer Kunz, P.L.L.C., Jeffery A. Ramaley, and Joni Mangino, urging reversal for amicus curiae Nitro Industrial Coverings, Inc.

Davis & Young, C. Richard McDonald, and Jennifer Sardina Carlozzi, urging reversal for amici curiae Asbeka Industries of Ohio; Hill Building Supply, Inc.; and Nock Refractories Co., Inc.

Squire, Sanders & Dempsey, L.L.P., and Laura Kingsley Hong, urging reversal for amicus curiae Applied Industrial Technologies, Inc.

Reminger & Reminger Co., L.P.A., and Thomas R. Wolf, urging reversal for amicus curiae Ohio Pipe & Supply Inc.

Wayman, Irvin & McAuley, L.L.C., and Dale K. Forsythe, urging reversal for amicus curiae Gateway Industrial Supply.

Oldham & Dowling and Reginald S. Kramer, urging reversal for amicus curiae Fairmont Supply Co.

Roetzel & Andress, Susan Squire Box, and Brad A. Rimmel, urging reversal for amicus curiae C.P. Hall Co.

Swartz Campbell, L.L.C., and Kenneth F. Krawczak, urging reversal for amicus curiae Mau–Sherwood Supply Co.

Grogan Graffam, P.C., and Leo Gerard Daly, urging reversal for amicus curiae F.B. Wright Co. of Pittsburgh.

McLaughlin & McCaffery, L.L.P., and Dennis P. Zapka, urging reversal for amicus curiae R.E. Kramig & Co., Inc.

Baker & Hostettler, L.L.P., and Wade A. Mitchell, urging reversal for amicus curiae McGraw Construction Co, Inc.

Bricker & Eckler, L.L.P., Kurtis A. Tunnell, and Anne Marie Sferra, urging reversal for amicus curiae Ohio Alliance for Civil Justice.

Karen R. Harned and Elizabeth A. Gaudio, urging reversal for amicus curiae National Federation of Independent Business Legal Foundation.

Keeley, Kuenn & Reid and George W. Keeley, urging reversal for amicus curiae National Association of Wholesale–Distributors.

Robin S. Conrad and Amar D. Sarwal, urging reversal for amicus curiae National Chamber Litigation Center, Inc.

Lynda S. Mounts and Kenneth A. Stoller, urging reversal for amicus curiae American Insurance Association.

Ann W. Spragans and Sean McMurrough, urging reversal for amicus curiae Property Casualty Insurers Association of America.

Greg Dykstra, urging reversal for amicus curiae National Association of Mutual Insurance Companies.

Donald D. Evans, urging reversal for amicus curiae American Chemistry Council.