[Cite as *Siller v. State*, 2014-Ohio-2777.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100839**

# THOMAS SILLER, ET AL.

PLAINTIFFS-APPELLANTS

vs.

# STATE OF OHIO

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-11-769912

**BEFORE:** Jones, P.J., Rocco, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** June 26, 2014

**ATTORNEY FOR APPELLANTS**

Terry H. Gilbert
Friedman & Gilbert Attorneys at Law
55 Public Square, Suite 1055
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Charles E. Hannan
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

{¶1} In this accelerated appeal, plaintiffs-appellants Thomas Siller and Walter Zimmer challenge the trial court's December 2013 judgment determining that they were not "wrongfully imprisoned" individuals under R.C. 2743.48.[1]  We affirm.

<h2>I.   Procedural History and Facts</h2>

{¶2} In 1998, Siller and Zimmer were charged with the following crimes stemming from the assault of an elderly woman, Alice Lucy Zolkowski, in her home: felonious assault, aggravated burglary, aggravated robbery, attempted aggravated murder, and kidnapping.  They were tried in a joint jury trial and convicted on all counts.  The trial court sentenced Siller and Zimmer to 20 and 40 years in prison, respectively.  The convictions and sentences were upheld on appeal.  *State v. Siller*, 8th Dist. Cuyahoga No. 75139, 1999 Ohio App. LEXIS 5088 (Oct. 28, 1999); *State v. Zimmer*, 8th Dist. Cuyahoga No. 75138, 1999 Ohio App. LEXIS 5093 (Oct. 28, 1999).

{¶3} Zolkowski never regained consciousness from the attack, and two years later, she passed away.  In May 2000, Siller and Zimmer were charged with aggravated murder.  Siller's case proceeded to a jury trial, and he was convicted.  The trial court sentenced him to a 30-year prison term, to run concurrently to the 20 years previously imposed.  Zimmer pleaded guilty to involuntary manslaughter during the commission of aggravated burglary.  The trial court sentenced him to a 10-year prison term, to run

[1] An accelerated appeal is authorized pursuant to App.R. 11.1 and Loc.App.R. 11.1.  The purpose of an accelerated docket is to allow an appellate court to render a brief and conclusory decision. *Highland Hills v. Feldman,* 8th Dist. Cuyahoga No. 81095, 2002-Ohio-4185, ¶ 1, fn.1.

consecutively to the previously imposed 40-year sentence.

{¶4} In 2005, the Innocence Project began working on Siller and Zimmer's case. The Project obtained new evidence and testing, and filed motions for new trials and to vacate the plea. The trial court denied Siller's motion, and he appealed. This court reversed and remanded the matter for a new trial. *State v. Siller*, 8th Dist. Cuyahoga No. 90865, 2009-Ohio-2874. The state agreed to allow Zimmer to have a new trial as well.

{¶5} Siller and Zimmer were unable to meet bond while their cases were back at the trial court level, and they remained incarcerated. During pretrial negotiations, the state offered to dismiss the murder indictments in exchange for pleas to amendments of the original indictment to reflect three counts of theft/aggravated theft, with total sentences of 12 years. Siller and Zimmer accepted the offer, pleaded guilty to the amended charges, were sentenced to 12 years, and were immediately released for time served. At the time of their release, Siller and Zimmer had each been incarcerated for a total of 13 years.

{¶6} In 2011, Siller and Zimmer filed this action against the state, seeking a declaration under R.C. 2743.48 that they were wrongfully incarcerated individuals. The parties filed motions for summary judgment, and the trial court granted the state's motion, thereby determining that Siller and Zimmer were not wrongfully imprisoned individuals under the statute. They challenge that determination with three assigned errors for our review:

> [I.] The trial court erred by concluding appellants pleaded guilty to a lesser included offense when neither the court nor the jury involved instructed (or could have instructed) on the lesser included offenses of theft/aggravated

theft.

[II.] The trial court erred in finding that the lack [of] evidence presented in the underlying criminal case was irrelevant to the determination that theft/aggravated theft is a lesser included offense of aggravated robbery.

[III.] The trial court erred by retroactively applying Ohio case law to find that theft/aggravated theft is a lesser included offense of aggravated robbery.

## II.    Law and Analysis

{¶7} We review an appeal from summary judgment under a de novo standard of review.  *Baiko v. Mays*, 140 Ohio App.3d 1, 7, 746 N.E.2d 618 (8th Dist.2000), citing *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987); *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 699 N.E.2d 534 (8th Dist.1997).    Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.

{¶8} Under Civ.R. 56, summary judgment is appropriate when (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) when viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party.

{¶9} R.C. 2743.48 governs civil actions against the state for wrongful imprisonment.    Under R.C. 2743.48(A), a "wrongfully imprisoned individual" is an individual who satisfies each of the following criteria:

(1) The individual was charged with a violation of a section of the Revised Code by an indictment or information prior to, or on or after, September 24, 1986, and the violation charged was an aggravated felony or felony.

(2) The individual was found guilty of, but did not plead guilty to, the particular charge or a lesser-included offense by the court or jury involved, and the offense of which the individual was found guilty was an aggravated felony or felony.

(3) The individual was sentenced to an indefinite or definite term of imprisonment in a state correctional institution for the offense of which the individual was found guilty.

(4) The individual's conviction was vacated or was dismissed, or reversed on appeal, the prosecuting attorney in the case cannot or will not seek any further appeal of right or upon leave of court, and no criminal proceeding is pending, can be brought, or will be brought by any prosecuting attorney, city director of law, village solicitor, or other chief legal officer of a municipal corporation against the individual for any act associated with that conviction.

(5) Subsequent to sentencing and during or subsequent to imprisonment, an error in procedure resulted in the individual's release, or it was determined by a court of common pleas that the offense of which the individual was found guilty, including all lesser-included offenses, either was not committed by the individual or was not committed by any person.

{¶10} The trial court determined that Siller's and Zimmer's pleas to theft/aggravated theft foreclosed them under R.C. 2743.48(A)(2) from being wrongfully incarcerated individuals. That subsection of the statute, therefore, is what is at issue in this appeal. The three assignments of error revolve around this issue and will be

addressed together.

{¶11} Siller and Zimmer first contend that their pleas in 2011 to theft/aggravated theft were not lesser-included offenses of aggravated robbery of which they were convicted in 1998. The appellants acknowledge *State v. Smith*, 117 Ohio St.3d 447, 2008-Ohio-1260, 884 N.E.2d 595, and *State v. Cooper*, 8th Dist. Cuyahoga No. 96635, 2012-Ohio-355, wherein the Ohio Supreme Court and this court, respectively, held that theft is a lesser-included offense of aggravated robbery. *Smith* at 452; *Cooper* at ¶ 19. But, according to Siller and Zimmer, their 2011 theft/aggravated theft pleas "cannot be a lesser included offense of aggravated robbery because they did not plead guilty to a 'lesser-included offense by the court or jury involved,'" as set forth under the statute. Appellants' Brief, p. 8.

{¶12} The appellants contend that the crimes committed against the victim did not involve a theft or even an attempted theft. Thus, according to Siller and Zimmer, neither a court nor jury could have found them guilty of theft/aggravated theft as a lesser-included offense of aggravated robbery. But the statute is not written to support the appellants' contention. It states:

> (2) The individual was found guilty of, *but did not plead guilty to*, the particular charge or a lesser-included offense by the court or jury involved, and the offense of which the individual was found guilty was an aggravated felony or felony.

(Emphasis added.) R.C. 2743.48(A)(2).

{¶13} Siller and Zimmer pleaded guilty to theft/aggravated theft, a lesser- included offense of the originally indicted aggravated robbery. Thus, the mere fact of the plea in

this case disqualifies them from being wrongfully incarcerated individuals. The language cited by the appellants — "by the court or jury involved" — contemplates a situation other than a plea, that is, a jury or bench trial. That situation is not implicated here.

{¶14} We are not persuaded by the appellants' contention that the facts did not support that a theft even occurred during the incident, or, if one did, that it met the monetary requirements for a third-degree theft/aggravated theft conviction.

{¶15} The state contends, and we agree, that if the appellants believe that there was some irregularity with the taking of their pleas, or if they believe they were inadequately represented at the plea hearing, their "remedies would arguably include proceedings to set [aside] their guilty pleas and face a new trial * * *." State's Brief, p. 10.

{¶16} In short, Siller and Zimmer pleaded guilty to theft/aggravated theft, a lesser-included offense of the originally indicted charge of aggravated robbery and, therefore, under R.C. 2743.48(A)(2), they are barred from being declared wrongfully imprisoned individuals.

{¶17} The appellants further contend that the trial court erred in retroactively applying the law to their case to find that theft/aggravated theft is a lesser- included offense of aggravated robbery. This assigned error is based on the fact that, in 1998 when the appellants were first convicted, theft/aggravated theft was not deemed as a lesser included offense of aggravated robbery. *See State v. Bozeman*, 2d Dist. Montgomery No. 13741, 1994 Ohio App. LEXIS 1747, *7 (Apr. 20, 1994). The holding

in *Bozeman* was later upheld by the Ohio Supreme Court. *State v. Carter*, 89 Ohio St.3d 593, 601, 734 N.E.2d 345 (2000). But in 2008, the Ohio Supreme Court revisited the issue, and held that theft/aggravated theft is a lesser-included offense of robbery. *Smith*, 117 Ohio St.3d 447, 2008-Ohio-1260, 884 N.E.2d 595, ¶ 29.

{¶18} In light of the above, Siller and Zimmer contend that the trial court's "application of the retroactive judicial alteration regarding theft/aggravated theft as a lesser included offense deprived [them] of their due process rights of notice and fair warning." Appellants' Brief, p. 12. We disagree.

{¶19} In *Peerless Elec. Co. v. Bowers*, 164 Ohio St. 209, 129 N.E.2d 467 (1955), the Ohio Supreme Court held as follows regarding the prospective versus retroactive application of court decisions:

> The general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it was never the law.

*Id.* at 210. The court recognized two exceptions, however: (1) when "contractual rights have arisen" or (2) when "vested rights have been acquired under the prior decision." *Id.*

{¶20} An example of an instance where the prospective application of a decision was warranted can be found in *Minister Farmers Coop. Exchange Co., Inc. v. Meyer*, 117 Ohio St.3d 459, 2008-Ohio-1259, 884 N.E.2d 1056. In *Minister*, the Ohio Supreme Court "establish[ed] the proper method for implementing interest rates exceeding the statutory maximum on a book account pursuant to R.C. 1343.03(A)." *Id.* at ¶ 30. The court declined, however, to apply the method retroactively so as not to "create shock

waves throughout the many sectors of Ohio's economy that rely on book accounts to do business." *Id.*

**{¶21}** The Ohio Supreme Court has also stated that "[c]onsideration should be given to the purpose of the new rule or standard and to whether a remand is necessary to effectuate that purpose." *Wagner v. Midwestern Idemn. Co.*, 83 Ohio St.3d 287, 290, 699 N.E.2d 507 (1998). In *Wagner*, the court declined to retroactively apply intervening case law that lowered the burden of proving that an insurer acted in bad faith to the parties before it. The court reasoned that the jury had already found that the insurer had acted in bad faith under the higher burden of proof, so remanding the cause to apply the lower burden of proof from the intervening case would serve no purpose. *Id.*

**{¶22}** In 2008, the Ohio Supreme Court reiterated its holding as follows:

> * * * the general rule in Ohio is that a decision will be applied retroactively unless retroactive application interferes with contract rights or vested rights under the prior law. However, a court also has discretion to impose its decision only prospectively after considering whether retroactive application would fail to promote the rule within the decision and/or cause inequity.

*Dicenzo v. A-Best Prods. Co., Inc.*, 120 Ohio St.3d 149, 2008-Ohio-5327, 897 N.E.2d 132, ¶ 14.

**{¶23}** Siller and Zimmer did not have any contract or vested rights with the prior law regarding theft/aggravated theft as a lesser-included offense of aggravated robbery. Further, the retroactive application of the law holding that theft/aggravated theft is a lesser-included offense of aggravated robbery does not generally "fail to promote the rule within the decision and/or cause inequity." *Dicenzo* at *id.* In fact, the intervening

decision is generally beneficial to those charged with aggravated robbery: they may now be able to request an instruction on the lesser crime of theft/aggravated theft. Simply put, there was no inequity here that required prospective application of the lesser-included offense law.

{¶24} In light of the above, the three assignments of error are overruled.

{¶25} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., PRESIDING JUDGE

KENNETH A. ROCCO, J., CONCURS WITH
SEPARATE OPINION;
TIM McCORMACK, J., CONCURS WITH
MAJORITY AND SEPARATE CONCURRING
OPINION


KENNETH A. ROCCO, J., CONCURRING:

{¶26} While I concur wholeheartedly with the well-reasoned majority opinion, I write separately to emphasize a point that deserves additional comment: there has been precious little justice in any of these cases for Lucy Zolkowski.

**{¶27}** I made the following pertinent observations in my dissent in *State v. Siller*, 8th Dist. Cuyahoga No. 90865, 2009-Ohio-2874, ¶ 64-135:

*The injustice in these cases is that Siller's co-defendant Smith negotiated a plea to greatly reduced charges and, virtually, a "slap on the wrist" for his participation in crimes that eventually became the brutal murder of Lucy Zolkowski.* As the majority opinion points out, although Smith had been charged along with Siller and Zimmer in CR-361726 with attempted aggravated murder, aggravated burglary, kidnapping, felonious assault, and aggravated robbery, he pleaded guilty to only aggravated robbery, and received a minimum sentence and immunity from further prosecution; the state dismissed all other charges.

It is difficult to imagine that the bargain would have been made but for the misfeasance of [Serowik,] a police serologist who miserably missed detecting Lucy's blood on Smith's pants. *This injustice, however, is not corrected by granting Siller a new trial he does not deserve in CR-391411, nor can it be.* * * *

*Siller* * * * *presented no challenge to his convictions themselves [in his previous appeals]; he made no claim of innocence.* In light of the voluminous record on appeal, it remains inexplicable that, although provided opportunities since his first trial, *he has never indicated that he was not involved in committing the crimes.*

His original convictions were based upon evidence that *he and two co-defendants, Walter Zimmer and Jason Smith, were involved in beating and robbing Zolkowski inside her modest home during the early morning hours of June 3, 1997.* Siller claimed in [his first appeal] that his sentence for kidnapping should have been merged with the sentences imposed for his other convictions, on the basis that it was an allied offense pursuant to R.C. 2941.25(A). After a review of the evidence presented, his claim was rejected [by this court].

As this court recounted the evidence presented at Siller's second trial, it noted that *fingerprints from Siller, Zimmer, and Smith were "lifted" from various places in the victim's home.* The victim kept documents that demonstrated Siller and Zimmer often borrowed money from her; the sum totaled over $19,000. Moreover, the detectives interviewed the victim's neighbors and were informed that "Siller and Zimmer had been 'hanging around' the victim's home at odd hours of the night." * * *

When the police interviewed Siller, he stated that he was called to his friend Rose Crowder's home and "saw Zimmer, who was visibly upset. * * * Zimmer told [Siller] he had found Zolkowski * * *. Zimmer did not want to call 911 because he had outstanding warrants. Siller also did not want to call 911 because of his own outstanding warrants. After driving Zimmer home, Siller decided to make [an] anonymous 911 call. The police

were suspicious of Siller's statement because he told them he was at Crowder's house sometime after midnight and before 3:00 a.m. The 911 call [, however,] was not placed until 3:49 a.m. The statement also was suspicious because, although Zimmer gave a similar statement to police, he contended he was with Siller until about midnight. Siller was brought back for further questioning about his inconsistent statements, to which he floundered, attempting to reconcile the differences." * * *

*  *  * *Smith's was not the only testimony that proved Siller and Zimmer went into Zolkowski's house that night.  The jury additionally heard from Thomas Campbell, who shared a cell with Siller* while he was at the county jail "between July and November 2000."

Campbell testified that "*Siller told him that it was Zimmer and Smith who first went into Zolkowski's house* and that when Siller came in and saw Zolkowski tied and gagged in a chair, he *told her to tell them where the money was or they would kill her. Siller and Zimmer then beat and cut Zolkowski * * *. According to Campbell, Siller told him that at one point, he held Zolkowski's head up while Zimmer beat her. * * * .*"

The record reflects that Siller was at the victim's house on the night of the incident. Campbell testified he admitted this. There is also no dispute that Smith was in Siller's and Zimmer's company that night * * * .

*  *  * [I]n this case, during closing argument, defense counsel forcefully reminded the jury of Serowik's unreliability as a witness, and, too, urged the jury to consider Smith's motives to place the blame for the crimes on Siller. *The jury, unfortunately, could do no more. The state already had decided to provide Smith "total immunity for prosecution on the murder" of Zolkowski. This is the injustice that occurred in this case * * * .*

In my view, * * * evidence that several of the victim's blood spatters appear on the front and back of Smith's pants, rather than only one on the front, is cumulative in nature. * * *

Serowik was only one of many witnesses presented * * * [and] his testimony was not a linchpin of the state's case, but only a piece of the entire picture.

*  *  *

The jury heard testimony from many witnesses, not only Smith and Serowik, that proved Siller and Zimmer borrowed large amounts of money from Zolkowski, some of which went to Smith for drugs, came and went from her house at will, and that Siller, at the very least, admitted he knew from Zimmer that Zolkowski had been beaten that night. Like Zimmer, Siller had simply left her there.

* * *

* * * Siller never testified to proclaim his innocence. Instead, he exercised his right against self-incrimination. The jury in Siller's case thus was not required to consider Siller's credibility directly. Rather, the jury was presented with additional evidence, i.e., testimony other than Smith's or Serowik's, that established *Siller admitted participating in the beating, and Siller could describe the incident.* * * *

Consequently, even if the jury were presented with evidence that DNA analysis located many more spatters of the victim's blood on Smith's pants, this evidence would not show a "reasonable probability" that Siller's trial on a charge of aggravated murder would have had a different result.

*Siller has never asserted in an affidavit presented to the trial court* * * * *"consistent with his defense theory [at trial] that Smith alone beat the victim to death."* It is one thing to invoke a Fifth Amendment right against self-incrimination at trial. It is quite another completely to fail to provide a personal affidavit in support of one's own motion for a new trial based upon "newly-discovered evidence."

At best, the record reflects *Siller himself has only argued that he was not one of the "principal offenders."* * * *

(Emphasis added; citations omitted.)

{¶28} From my review of the records in each of the criminal cases underlying this current appeal, I think it reasonable to suggest that, as told to him by Siller, Campbell may have provided the scenario that is closest to the truth about that night in Lucy Zolkowski's home. Perhaps Smith merely substituted himself into Siller's place when Smith's participation in the crimes commenced. It would not be the first time in the annals of criminal justice that an accomplice sought to minimize his actual participation. It certainly does not mean that Siller and Zimmer shared no guilt in causing Lucy's death along with Smith in their efforts to acquire more of her money.

{¶29} As to appellants' claim in the instant appeal that, in 1998, theft was not considered by the Ohio Supreme Court to be a lesser-included offense of aggravated robbery, I am old enough to have studied common law, which is the foundation of our nation's jurisprudence, and at common law, theft

has always been considered a lesser-included offense of robbery. Thus, the inclusion of that word in the very definition of the crime of aggravated robbery as set forth in R.C. 2911.01(A).

{¶30} Simply put, I consider Siller's and Zimmer's suit in this case to be beyond the ability of the word "gall" to describe it. I therefore concur in the majority opinion.