[Cite as *State v. Floyd*, 2017-Ohio-386.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 104376**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ALLEN T. FLOYD

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-602180-A

**BEFORE:** Keough, A.J., Celebrezze, J., and Jones, J.

**RELEASED AND JOURNALIZED:** February 2, 2017

**ATTORNEY FOR APPELLANT**

Andrew P. Baker
11510 Buckeye Road
Cleveland, Ohio 44104


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By: Kevin E. Bringman
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, A.J.:

{¶1} Defendant-appellant, Allen T. Floyd ("Floyd"), appeals from the trial court's judgment, rendered after a bench trial, finding him guilty of aggravated robbery with accompanying firearm specifications, kidnapping, grand theft, attempted grand theft, having weapons while under disability, and receiving stolen property, and sentencing him to 12 years incarceration. Finding no merit to the appeal, we affirm.

## I. Factual and Procedural Background

{¶2} Floyd was charged in an 18-count indictment. The charges related to four incidents that occurred over a three-week period in September 2015. Floyd pleaded not guilty and waived his right to a jury trial, and the matter proceeded to a bench trial.

## A. The September 6, 2015 Incident

{¶3} Judy Nogueras testified that at approximately 5 p.m. on September 6, 2015, she and her boyfriend, Jose Hernandez, drove to the Giant Eagle store located on Lorain Road in Cleveland. Hernandez parked his 2009 Dodge Journey SUV close to the entrance of the grocery store and left the car running with the doors unlocked as he went inside.

{¶4} Nogueras stayed in the SUV, waiting for Hernandez. Suddenly, a male opened the passenger door to the SUV and told Nogueras to get out, but leave her purse behind. When she told him that he could have the car but not her purse, he lifted his shirt and put his hand on a gun in the waistband of his pants.

**{¶5}** Nogueras testified that as this was happening, another male opened the driver's side door to the SUV and got in. She looked over, expecting to see Hernandez, but saw an unknown male. Nogueras said that as she began yelling for help, Hernandez ran up to the vehicle.

**{¶6}** Hernandez testified that he ran to the vehicle and yelled at the male standing by the open passenger door to leave. He then saw a male sitting in the driver's seat, so he ran around to the driver's side of the vehicle. When the male jumped out of the vehicle, Hernandez got in the driver's seat. Nogueras, meanwhile, grabbed the keys from the ignition, got out of the vehicle, and ran into the store.

**{¶7}** Hernandez saw the male who had been in the driver's seat approaching him again, so he got out of the car to confront him. Hernandez said that as he faced the male, the male lifted up his shirt, a gesture Hernandez interpreted to mean that he had a gun concealed under his shirt. Hernandez testified that he did not look down to see if there was, in fact, a gun. The males then ran away.

**{¶8}** Cleveland police officer Wilson Santos testified that he and his partner responded to the scene, where he spoke with Nogueras, who gave a description of the male in the driver's seat.

**{¶9}** Cleveland police detective Todd Stampiel testified that he subsequently obtained surveillance video of the attempted carjacking from Giant Eagle. After posting photographs of the males from the video on CrimeStoppers and social media, he received an anonymous tip that one of the males was Floyd. Using that information, he generated

a photo array that included Floyd's picture. Both Nogueras and Hernandez picked Floyd out of the photo array and identified him as the male in the driver's seat of the SUV on September 6, 2015. Both Nogueras and Hernandez also identified Floyd in court as the male who was in the driver's seat of the SUV that day.

{¶10} Floyd was charged with aggravated robbery in violation of R.C. 2911.01(A)(10); kidnapping in violation of R.C. 2905.01(A)(2); attempted grand theft in violation of R.C. 2923.02/2913.02(A)(1); and having a weapon while under disability in violation of R.C. 2923.13(A) regarding this incident (Counts 1-4).

## B.    The September 28, 2015 Incident

{¶11} Mary Cornely testified that on September 28, 2015, at approximately 9 p.m., she left Heck's Café in Ohio City and walked to her car, a red Hyundai Tucson SUV, which was parked on the corner next to restaurant. She testified that as she exited the restaurant, she saw a young, short black woman standing on the sidewalk with her back to the street. Cornely said that as she walked by the woman, she heard her say something. Cornely turned around and saw that the woman was looking at a male, later identified as Floyd, who was standing on the corner near Cornely's vehicle.

{¶12} Cornely testified that as she approached the driver's side door of her vehicle, the male jumped in front of her, pulled a gun out of his waistband, pointed it at her, and told her to give him her keys. Cornely said that as she handed him her keys, she pulled back on them, and the key fob came off in her hand. She then ran into the restaurant, screaming, as the male tried to get in her car. Cornely said that she got a good look at the

male because she watched him through a window in the restaurant as she kept locking the doors with the keyfob as he tried to get in her car. The male eventually got in the SUV, however, and drove off.

{¶13} Christopher Guthrie, a cook at Heck's Café, testified that he was coming out of the café when he heard the SUV "peel off." He saw the young black woman run down the street and then jump in the SUV, which had stopped briefly to pick her up. Guthrie later positively identified the woman from a photo array.

{¶14} Police responded to the scene, and Cornely gave a description of the robber. Cornely admitted at trial that she did not pick Floyd out of a photo array that was later shown to her. She did, however, identify Floyd in court as the male who stole her car at gunpoint, and stated that she was 100 percent certain that he was the male involved in the carjacking on September 28, 2015. Cornely also identified the woman involved in the carjacking from a photo array. Cleveland police detective John Lally testified at trial that during his investigation of the incident, he learned that the woman, Tanashia Bradley, is Floyd's sister.

{¶15} Floyd was charged with aggravated robbery in violation of R.C. 2911.01(A)(1); kidnapping in violation of R.C. 2905.01(A)(2); grand theft in violation of R.C. 2913.02(A)(1); and having a weapon while under disability in violation of R.C. 2923.13(A)(2) with respect to this incident (Counts 5-8).

C.    The September 29, 2015 Incident Involving Hannah Moses

{¶16} Hannah Moses, a college student, testified that around 4 p.m. on September 29, 2015, as she walked to a local market in Cleveland, she observed a young woman sitting on a bench and a male standing by her. They both looked at her as she walked by. A few seconds later, as she turned the corner, the male ran up to her, pointed a gun at her, backed her up against the wall, and told her to give him her wallet, which she did. Moses said that there were several cancelled checks and receipts in her wallet. The male then told her to run away.

{¶17} Moses ran away, and then called 911. She gave a description of the robber to the responding police officers. Case Western University police officer Scott Delrosa testified that he subsequently obtained surveillance video from cameras located around the area where the robbery occurred. He later prepared a photo array, but Moses was unable to identify anyone from the array.

{¶18} Floyd was charged with aggravated robbery in violation of R.C. 2911.01(A)(1); kidnapping in violation of R.C. 2905.01(A)(2); theft in violation of R.C. 2913.02(A)(1); and having a weapon while under disability in violation of R.C. 2923.13(A)(2) regarding this incident (Counts 9-12).

D. The September 29, 2015 Incident Involving Deberra Schroeder

{¶19} Captain Deberra Schroeder, acting battalion chief for the Cleveland Fire Department and a former police officer, testified that at approximately 7 p.m. on September 29, 2015, she was sitting in her 2015 Jeep Trailhawk in the parking lot of the

Giant Eagle located at 3050 W. 117th Street in Cleveland. The car was running and the doors were unlocked.

{¶20} Suddenly, a male opened the driver's side door, pointed a gun at her face, and said, "Get out of the car. I have a gun." Schroeder testified that another male was at the passenger side of the vehicle but was unable to get in the vehicle. She testified that she reached for her right side, as if she had a gun there, and lunged at the male on the driver's side, yelling "I have a gun too." Both males then ran away. Schroeder chased them in her vehicle but was unable to catch them.

{¶21} Schroeder testified that the male who pointed the gun at her was wearing a dark hoodie or jacket zipped all the way up, with the hood pulled tightly around his face. She said that she saw only the male's eyes, eyebrows, and chin. She said that later, when she was shown a six-person photo array, she eliminated five of the males as the robber but did not definitely identify Floyd from the array because he was looking down in the photograph, and she felt she needed to see his eyes to make a definite identification. In court, however, she positively identified Floyd as the male with the gun, and stated that she was 100 percent certain of her identification.

{¶22} Floyd was charged with aggravated robbery in violation of R.C. 2911.01(A)(1); kidnapping in violation of R.C. 2905.01(A)(2); attempted grand theft in violation of R.C. 2923.02/2913.02(A)(1); and having a weapon while under a disability in violation of R.C. 2923.13(A)(2) related to this incident (Counts 13-16).

E.     Floyd Is Apprehended

{¶23} Cleveland police officer Michael Harper testified that on September 30, 2015, he saw a vehicle make a left turn without signaling. He ran the plates and learned that the vehicle, a red Hyundai Tucson, was stolen. He followed the vehicle until it turned into a parking lot, and then activated his overhead lights. The vehicle stopped, and one male (the driver) and three females exited the vehicle and ran away.

{¶24} After a short pursuit, officer Harper apprehended Floyd. He found a dark jacket and the keys to the Hyundai Tucson, the same vehicle stolen from Cornely two days earlier, next to Floyd. The officers also apprehended Tanashia Bradley, Floyd's sister, who ran from the vehicle when it stopped. The police subsequently found Moses's cancelled checks and receipts in the glove compartment of the Hyundai Tucson.

{¶25} Counts 17 and 18 of the indictment charged Floyd with receiving stolen property in violation of R.C. 2913.51(A) in connection with this incident.

{¶26} The trial judge found Floyd guilty of all counts as charged in the indictment and sentenced him to 16 years incarceration. This appeal followed.

## II. Law and Analysis

### A. Jury Waiver

{¶27} Immediately prior to trial, defense counsel informed the trial court that Floyd wished to waive a jury trial. She told the judge that after speaking with Floyd "to explain the pros and cons about a bench and jury trial," she believed that "he has a full understanding and is making an informed decision about this." Floyd then signed the jury waiver in open court. The following colloquy then took place:

THE COURT: Mr. Floyd, have you done this knowingly, voluntarily, signed the jury waiver?

THE DEFENDANT: Yes, sir.

THE COURT: It's your wish to proceed to trial to the judge?

THE DEFENDANT: Yes.

THE COURT: Okay. All right. We'll get this filed and then we can start the trial.

{¶28} In his first assignment of error, Floyd contends that his convictions must be reversed because this colloquy was inadequate to properly advise him and determine that he understood the implications of voluntarily relinquishing his right to a jury trial. Floyd's argument is without merit.

{¶29} Ohio Crim.R. 23(A) allows a defendant to waive his right to a trial by jury in serious offense cases provided that the waiver is made knowingly, intelligently, and voluntarily, and in writing. *See also* R.C. 2945.05.

{¶30} *In State v. Lomax*, 114 Ohio St.3d 350, 2007-Ohio-4277, 872 N.E.2d 279, the Ohio Supreme Court found that to be valid, a jury waiver must meet five conditions. It must be (1) in writing, (2) signed by the defendant, (3) filed, (4) made part of the record, and (5) made in open court. "There is no requirement in Ohio for the trial court to interrogate a defendant in order to determine whether he or she is fully apprised of the right to a jury trial." *Id.* at ¶ 21, citing *State v. Jells*, 53 Ohio St.3d 22, 25-26, 559 N.E.2d 464 (1990). Moreover, a trial court is not required to inform a defendant of the implications of waiver. "While it may be better practice for the trial judge to enumerate

all the possible implications of a waiver of a jury, there is no error in failing to do so."
*Lomax* at ¶ 21, quoting *Jells* at 26.

{¶31} There must, however, be some evidence in the record that the defendant acknowledged the waiver to the trial court while in the presence of counsel. *Lomax* at ¶ 42. As the Ohio Supreme Court stated in *Lomax*, "[w]e do not mandate magic words, or a prolonged colloquy, but simply what Ohio law intends — that a defendant while in the courtroom and in the presence of counsel, if any, acknowledges to the trial court that the defendant wishes to waive the right to a jury trial." *Id.* at ¶ 48.

{¶32} That is exactly what happened in this case. Floyd signed the jury waiver in open court. The trial court then asked Floyd whether he had waived his right to a jury trial knowingly and voluntarily, and Floyd, in the presence of his counsel, responded affirmatively. The trial court again questioned Floyd whether he desired to proceed to trial by the bench, and Floyd again responded affirmatively. We find that the trial court's questions of Floyd were sufficient to determine that he was knowingly and voluntarily waiving his right to a jury trial. The first assignment of error is overruled.

**B.    Sufficiency of the Evidence**

{¶33} In his second assignment of error, Floyd contends that his convictions for the counts relating to the incidents involving Moses (Counts 9-12) and Schroeder (Counts 13-16) are not supported by sufficient evidence.

{¶34} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266,

2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶35} With respect to Moses, Floyd contends that there was insufficient evidence that he was the perpetrator of the offenses. He argues that the evidence was insufficient because Moses did not identify him in court or in a photo array, and the fact that he was in possession of her stolen property when he was apprehended, although sufficient to support a conviction for receiving stolen property, does not justify a conviction relating to the robbery.

{¶36} It is well-settled under Ohio law that a defendant may be convicted solely on the basis of circumstantial evidence. *State v. Nicely*, 39 Ohio St.3d 147, 151, 529 N.E.2d 1236 (1988). "Circumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable." *Id.*

{¶37} It is also well settled in Ohio that "the unexplained possession by a defendant of recently stolen property may give rise to a permissive inference from which a jury may conclude, beyond a reasonable doubt, that the accused is guilty of the theft." *State v. McAllister*, 53 Ohio App.2d 176, 180, 372 N.E.2d 1341 (8th Dist.1977), citing

*Methard v. State*, 19 Ohio St. 363 (1869); *State v. Brennan*, 85 Ohio App.175, 88 N.E.2d 281 (9th Dist.1949); *Cofield v. State*, 14 Law Abs. 29 (1933). "Such an inference is particularly significant when the defendant offers no explanation for his possession of the stolen goods." *State v. Brown*, 10th Dist. Franklin No. 05AP-601, 2006-Ohio-2307, ¶ 11, citing *McAllister, supra.*

{¶38} The evidence established that when Floyd was arrested, he was driving the vehicle that had been stolen from Mary Cornely only two days earlier. In the glove compartment of the stolen vehicle, the police found cancelled checks and receipts belonging to Hannah Moses, who had been robbed at gunpoint only the day before. Although she did not identify Floyd from a photo array or in court, Moses's description of the male who robbed her at gunpoint matched the description given to the police by Nogueras, Hernandez, and Cornely, who all positively identified Floyd as the robber.

{¶39} The evidence also established that like when Cornely was robbed, immediately before she was robbed, Moses observed a young black woman with the male who robbed her. Floyd's sister, Tanashia Bradley, who was positively identified by Cornely and Guthrie as the woman with Floyd when Cornely's vehicle was stolen outside Heck's Café, was apprehended fleeing from the stolen vehicle on September 30, 2015. And, significantly, Floyd gave no explanation for his possession of the stolen vehicle and Moses's belongings to either the police or the factfinder at trial. Viewing this evidence in a light most favorable to the prosecution, it is apparent that the state produced

sufficient evidence from which the factfinder could find, beyond a reasonable doubt, that Floyd was the male who robbed Moses at gunpoint on September 29, 2015.

{¶40} With respect to the incident involving Schroeder, Floyd contends that the evidence was insufficient to establish that the male who jerked open the door of Schroeder's vehicle, pointed a gun at her, and told her to get out of the car intended to rob her.[1] We disagree.

{¶41} Criminal intent may be proved by circumstantial evidence. *State v. Heinish*, 8th Dist. Cuyahoga No. 54427, 1988 Ohio App. LEXIS 3644, *35 (Sept. 8, 1988). Schroeder testified that the male brandished a gun and told her to get out of the car. She testified further that she interpreted the actions and words to mean that the male intended to steal her vehicle. Although Floyd did not specifically tell Schroeder that he wanted to steal her vehicle, when viewed in a light most favorable to the prosecution, this evidence is sufficient to convince a reasonable factfinder that Floyd's intent, as in the incidents involving Nogueras and Cornely, was to steal Schroeder's vehicle. The second assignment of error is therefore overruled.

## C. Manifest Weight of the Evidence

{¶42} In his third assignment of error, Floyd contends that his convictions should be reversed as against the manifest weight of the evidence.

---

[1]Under R.C. 2911.01(A)(1), regarding aggravated robbery, "[n]o person, in attempting or committing a theft offense * * * shall * * *  have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

**{¶43}** In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598 at ¶ 12. A reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 388, 678 N.E.2d 541. A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶44}** Initially, we note that any argument regarding Counts 1-4, the incident involving Nogueras and Hernandez, is without merit because defense counsel conceded at trial that "there's no question" Floyd was involved in this incident. (Tr. 613.)

**{¶45}** With respect to the other three incidents, we do not find this to be the exceptional case where the evidence weighs heavily against the conviction. All four victims gave similar descriptions of the male perpetrator to the police. Although Moses was unable to identify Floyd, Nogueras, Cornely, and Schroeder positively identified him as the perpetrator, and were 100 percent certain of their identification. When Floyd was apprehended after fleeing, he was driving Cornely's vehicle that had been stolen two days before, and items from Moses's wallet were found in the glove compartment of the stolen vehicle. In light of this evidence, the trial court, as factfinder, did not lose its way or create a miscarriage of justice in convicting Floyd.

**{¶46}** Nevertheless, Floyd argues that even if his convictions on the underlying charges are not against the manifest weight of the evidence, his convictions on the firearm specifications and the weapon under disability charges are against the manifest weight of the evidence because the operability of the alleged firearm was never established. In support of his argument, he relies on the fact that no firearm was ever recovered, and there was no evidence regarding the test firing of any weapon.

**{¶47}** R.C. 2941.145 requires proof beyond a reasonable doubt that "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." Under R.C. 2929.13(A)(2), "[n]o person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance if * * * the person * * * has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence."

**{¶48}** A "firearm" is "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." R.C. 2923.11(B)(1). It includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable. *Id.*

**{¶49}** In *Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541, paragraph one of the syllabus, the Ohio Supreme Court elaborated on the requisite proof to sustain a firearm specification:

A firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm.

{¶50} Thus, with respect to operability of a firearm in cases where no shots are fired and the firearm is not recovered, circumstantial evidence, such as the representations and actions of the gun operator, are of crucial importance. *State v. Fulton*, 8th Dist. Cuyahoga No. 96156, 2011-Ohio-4259, ¶ 34, citing *State v. Ware*, 9th Dist. Summit  No. 22919, 2006-Ohio-2693, ¶ 13. The implicit threat inherent in brandishing a firearm supports an inference that the firearm was operable. *Id.*

{¶51} Here, Hernandez testified that Floyd pulled up his shirt, a gesture that Hernandez interpreted to mean that he had a gun under his shirt. Cornely testified that Floyd pointed a gun at her as he told her to give him the keys to her SUV. Moses testified that Floyd pointed a gun at her, pushed her up against a wall, and told her to give him her wallet. And Schroeder testified that Floyd pointed a gun at her face and told her to get out of her car because he had a gun. The operability of Floyd's gun can be inferred from these facts and circumstances. Floyd showed the gun to all four victims as he was trying to rob them, supporting an inference that it was operable. Thus, Floyd's argument that his convictions on the firearm specifications and having weapons while under disability are against the manifest weight of the evidence is without merit. The third assignment of error is overruled.

**D.      Evidence Regarding Floyd's Juvenile History**

{¶52} Prior to trial, the prosecutor and defense counsel stipulated to the existence of juvenile offenses that would establish a disability. During trial, Detective Stampiel testified that during the course of his investigation, he learned that Floyd had been found delinquent in juvenile court for attempted murder.

{¶53} Floyd contends on appeal that the state then elicited further testimony from Detective Stampiel that the facts relating to Floyd's juvenile conviction were similar to the allegations in this case; *i.e.*, that he targeted females driving SUVs. Floyd argues that the admission of this evidence was improper under Evid.R. 404(B) because the state did not offer any exceptions within the rule that would allow for the admission of "prior bad acts" testimony.

{¶54} Floyd's argument is without merit because Detective Stampiel's testimony that Floyd targeted women in SUVs related solely to this case; it was not in reference to Floyd's juvenile conviction. The record reflects the following colloquy:

> THE PROSECUTOR: Detective, what similarities did you learn between the incidents of September 6th, September 28th, September — and the two incidents on September 29th?
>
> DEFENSE COUNSEL: Objection.
>
> THE COURT: Overruled.
>
> ANSWER: The similarities were that females by themselves were always targeted. And SUVs especially were targeted.
>
> THE PROSECUTOR: And either the September 6th or the September 29th incident —

DEFENSE COUNSEL: Objection.

THE COURT: Finish the question first.

THE PROSECUTOR: — did you ever learn whether or not the suspects entered Giant Eagle?

THE COURT: Overruled.

ANSWER: They were in the vestibule where you see them on the screen. I don't know that they actually ever went into the store.

THE PROSECUTOR: Okay. All right. Thank you Detective. Nothing further, Your Honor.

{¶55} As is apparent from the colloquy, the state did not ask detective Stampiel to compare Floyd's juvenile offenses with the offenses in this case. The state simply asked the detective whether he learned of any similarities between the incidents involved *in this case*. Accordingly, Floyd's argument regarding the improper admission of "prior bad acts" evidence is without merit.

{¶56} In light of Floyd's stipulation to his juvenile convictions, the trial court erred, however, in allowing the state to elicit testimony from Detective Stampiel that Floyd had been convicted in juvenile court of attempted murder, and in admitting the journal entries of Floyd's juvenile convictions.

{¶57} Floyd was indicted on four counts of having a weapon while under disability in violation of R.C. 2923.13(A)(2). Prior to trial, he stipulated to the existence of juvenile offenses that would establish a disability. In *State v. Creech*, Slip Opinion No. 2016-Ohio-8440, the Ohio Supreme Court held that in a case alleging a violation of R.C. 2923.13,

when the name or nature of a prior conviction or indictment raises the risk of a jury verdict influenced by improper considerations, a trial court abuses its discretion when it refuses a defendant's offer to stipulate to the fact of the prior conviction or indictment and instead admits into evidence the full record of the prior judgment or indictment when the sole purpose of the evidence is to prove the element of the defendant's prior conviction or indictment.

*Id.* at ¶ 40.

**{¶58}** Here, the trial court accepted Floyd's stipulation to his juvenile offenses that would establish a disability under R.C. 2923.13, but then allowed testimony regarding the nature of Floyd's juvenile offenses and the admission of the journal entries regarding those offenses. It was an abuse of discretion to do so because Floyd's stipulation established the fact of his legal status; i.e. that he had previously been convicted of a crime that would prohibit him from possessing a gun under R.C. 2923.13. The evidence offered by the state that Floyd had previously been convicted of attempted murder with a firearm specification created a risk of unfair prejudice that the factfinder would decide this case, which involved other offenses with a gun, "through a sequence of bad character reasoning." *Id.* at ¶ 36.

**{¶59}** Accordingly, because Floyd's stipulation was available, the court erred in admitting the prior judgment when the sole purpose of the evidence was to prove the element of Floyd's prior conviction.[2]

---

[2]The *Creech* decision was announced on December 29, 2016, so the trial court did not have the benefit of the decision at trial. Nevertheless, "'the general rule in Ohio is that a decision will be applied retroactively unless retroactive application interferes with contract rights or vested rights under the prior law. However, a court also has discretion to impose its decision only prospectively after considering

**{¶60}** Floyd did not object to Detective Stampiel's testimony at trial nor to the admission of the journal entries of his prior convictions, and accordingly, we consider whether the trial court's error was plain error. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Under the plain-error standard, an alleged error is not a plain error unless the error clearly changed the outcome of the trial. *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001), citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. A reviewing court must examine the error in light of all the evidence properly admitted at trial and determine whether the factfinder would have convicted the defendant even if the error had not occurred. *State v. Slagle*, 65 Ohio St.3d 597, 605, 605 N.E.2d 916 (1992).

**{¶61}** We find no plain error. The evidence against Floyd in this case was overwhelming, and it is apparent that he would have been convicted of aggravated robbery, kidnapping, grand theft, and receiving stolen property even had the evidence relating to his juvenile convictions not been admitted at trial. Moreover, the case was tried to the bench, and appellate courts presume that a trial court only considered relevant and admissible evidence in a bench trial. *State v. Chandler*, 8th Dist. Cuyahoga No.

whether retroactive application would fail to promote the rule within the decision and/or cause inequity.'" *Siller v. State*, 8th Dist. Cuyahoga No. 100839, 2014-Ohio-2777, ¶ 22, quoting *Dicenzo v. A-Best Prods.Co., Inc.*, 120 Ohio St.3d 149, 2008-Ohio-5327, 897 N.E.2d 132, ¶ 14. Floyd had no contract or vested rights in prior law that are implicated by the application of *Creech*, nor does the retroactive application of *Creech* fail to promote the rule announced in the decision or cause inequity. Accordingly, we apply the rule announced in *Creech* to this case.

81817, 2003-Ohio-6037, ¶ 17.  Accordingly, we cannot conclude that the error clearly affected the outcome of the trial.   The fourth assignment of error is overruled.

### E.      Ineffective Assistance of Counsel

**{¶62}** Last, Floyd contends that he was denied effective assistance of counsel because defense counsel did not move for separate trials for each of the incidents.

**{¶63}** In order to establish a claim of ineffective assistance of counsel, a criminal defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).   Prejudice is demonstrated when the defendant proves that, but for counsel's actions, there is a reasonable probability that the result of the proceedings would have been different.   *Strickland* at 694.

**{¶64}** Crim.R. 8 allows for the joinder of two or more offenses when the offenses "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."   Generally, the law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged are of the same or similar character.   *State v. Lott,* 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990).   Joinder and the avoidance of multiple trials is favored for many reasons, among which are conserving time and expense, diminishing the inconvenience to

witnesses, and minimizing the possibility of incongruous results in successive trials before different juries. *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981).

{¶65} We find no ineffective assistance of counsel because Floyd suffered no prejudice as a result of the joinder. Prejudice is not demonstrated if one offense would have been admissible as "other acts" evidence under Evid.R. 404(B) or if the evidence of each crime joined at trial is simple and direct. *Lott* at 163. As long as it is used for purposes other than proving that the accused acted in conformity with a particular character trait. Evid.R. 404(B) permits the admission of "other acts" evidence if it is related to and shares common features with the crime in question. *State v. Lowe*, 69 Ohio St.3d 527, 634 N.E.2d 616, (1994), paragraph one of the syllabus.

{¶66} The incidents at issue in this case shared common features: they were committed with a gun; they involved the same type of victim (younger women who were alone); and were committed for the same purpose (to acquire an SUV or other property with monetary value). Accordingly, the evidence of each crime would have been admissible as "other acts" evidence in separate trials. Moreover, the evidence relating to each event was simple and direct and capable of being segregated. There was no indication that the trier of fact was not able to discern the evidence on each charge, and we find nothing to indicate that the factfinder was influenced by the cumulative evidence against Floyd. Accordingly, the charges were properly joined for trial. Defense counsel's failure to move to sever did not prejudice Floyd, and therefore, was not ineffective assistance of counsel. The fifth assignment of error is overruled.

**{¶67}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

FRANK D. CELEBREZZE, JR., J., and
LARRY A. JONES, SR., J., CONCUR